BARNETTE, Judge.
This is an appeal by plaintiff Thomas Britt from a judgment rejecting his demands against Walter J. Barial, M.D., and Dr. Bariál’s professional liability insurer, The Travelers Indemnity Company.
Britt had filed suit seeking to recover damages for alleged acts of malpractice committed by Dr. Barial.
Plaintiff was examined initially by Dr. Barial on April IS, 1964, at Flint-Goodridge Hospital in New Orleans because of severe abdominal pains. Dr. Barial prescribed various medications in an attempt to ease plaintiff’s discomfort. These medications failed to relieve the pain, and Dr. Barial ordered him hospitalized for tests and further treatment. When, after 10 days of hospitalization, plaintiff had not responded to medication, Dr. Barial operated on him to remove a pyloric ulcer. The operation was an apparent success, however, several days later the surgial wound separated. On May 3, 1964, Dr. Barial resutured the incision, using stainless steel wire sutures of a type designed for that purpose and to be left permanently in the patient. In August, 1964, Britt again complained to Dr. Barial of pain in the wound area. Dr. Barial operated on him a third time and removed eight of the steel wire sutures.
Plaintiff continued to have pain and sought the services of another physician, Dr. Julius Isaacson. Dr. Isaacson discovered that there were two wire sutures still remaining in the plaintiff, so on December 21, 1964, he operated on him with the intention of removing both sutures but he removed only one of them, deliberately leaving the other as it was too deeply imbedded to extract without possible consequences more serious than its continued presence indicated.
Plaintiff apparently was still experiencing pain and consulted a third physician, Dr. Lawrence Strug, in June, 1965. In October, 1965, Dr. Strug performed what was the plaintiff’s fifth surgical procedure, removing the last remaining steel suture and a large amount of calcification which had formed in the area. Dr. Strug concluded by completely revising the wound.
The plaintiff has pleaded the doctrine of res ipsa loquitur. The most frequently cited case on the application of this doctrine in medical malpractice cases is Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1954). The Supreme Court in affirming the decree of the Orleans Court of Appeal encountered some difficulty in determining the factual question of negligence on the part of the operating physicians, but there does not appear to have been any dissent among the Justices on the rules which govern liability of physicians and surgeons and the applicability of the doctrine of res ipsa loquitur. In its opinion on rehearing the Court said:
“ * * * That jurisprudence as pointed out in the original opinion is that the law only exacts of physicians, surgeons and dentists that degree of skill and care which is usually possessed and exercised by practitioners of their profession in the same locality or community and makes it their duty to use reasonable care and diligence, along with their best judgment, in the application of their skill to the case before them. Regardless of what the jurisprudence may be in other *882 jurisdictions, this Court and the Courts of Appeal of the State have adopted the rule as stated as is made apparent in the several cases cited in the original opinion.
“The rule makes it incumbent on the physician, surgeon or dentist who becomes defendant in a malpractice case to show that he is possessed of the required skill and competence indicated and that in applying that skill to the given case he used reasonable care and diligence along with his best judgment. The rule therefore may be said to bear some relation to the doctrine of res ipsa loquitur which places the burden on a defendant having control of the dangerous instrumentality which caused an accident to show his freedom from negligence in a case where such accident would not ordinarily have occurred had proper care and use been made of the instrumentality. As stated by the Court of Appeal in its opinion in this case, however, that does not mean that the defendant must show just what was the cause of the occurrence.” 225 La. at 634-635, 73 So.2d at 786.
Our predecessor court, the Orleans Court of Appeal, said in that case:
“We have no doubt at all that the doctrine of res ipsa loquitur has no application where, in the ordinary suit against a physician, a surgeon, or a dentist for malpractice, all that is shown is that the desired result was not accomplished. On the other hand, however, we think that where the complaint is not based on the failure to obtain satisfactory results, but is based on the charge that, during the rendering of the professional services, there occurred some untoward event, or some omission or act from which there resulted something not ordinarily found to result during such treatment or operation, the physician, or the surgeon, or the dentist may be required to show that such unusual occurrence did not result from negligence on his part.” 61 So.2d 901, 905 (1952).
The Court of Appeal squarely held that the doctrine of res ipsa loquitur was applicable in the Meyer case, but' both the Court of Appeal and the Supreme Court, after applying the foregoing principles, found on the record in that case that the defendant physicians had successfully met and discharged the burden of proof of freedom from negligence, though on this point there were dissenting opinions among the Justices of the Supreme Court.
Applying the foregoing principles to the facts presented in the instant case, we have no difficulty in arriving at the conclusion that the basis for the application of the doctrine of res ipsa loquitur has not been established. The defendant Dr. Barial therefore is not called upon to exculpate himself from the presumption of negligence inherent in the application of the doctrine for the simple reason that the plaintiff has failed to prove any act or omission from which there resulted some unusual occurrence. At most he has shown only that the wound incident to the otherwise successful abdominal surgery did not heal in the manner desired or normally expected. As a result thereof, which might have been contributed to, in some degree, by the type of sutures used, he experienced pain and suffering and loss of employment. The expert testimony clearly supports the conclusion that everything done by Dr. Barial was in accordance with accepted standards of professional skill, knowledge, judgment, methods, and techniques exercised by other surgeons in good standing in the locality.
Counsel for plaintiff makes no serious attempt in his brief before this court to dispute the foregoing conclusion except to argue that Dr. Barial following the third surgical procedure, under local anesthetic for the purpose of removing “all” the stainless steel sutures, negligently and unknowingly left two of the sutures imbedded in the plaintiff’s abdominal surgical wound.
An attempt was made on trial to introduce into evidence certain letters, or reports, *883 from Dr. Barial to plaintiff’s employer or insurer, which, we assume from the implication made, might have contained a statement from Dr. Barial in substance that he had removed all the sutures, or that he had removed the sutures which were the source of plaintiff’s continued discomfort.
There was argument between counsel over the relevancy of the letters, or reports, and the trial judge made certain comments in connection therewith, which plaintiff contends were prejudicial, as will be discussed below. The judge did not exclude the letters, or reports, saying:
“ * * * I don’t understand it, but if you have no objection [and there was none] let the documents be admitted and filed.”
The letters, or reports, are not in the record before us, and there is no indication that they were formally filed or exhibited to the jury.
The apparent purpose in seeking to have the letters, or reports, admitted was to show that following the surgical procedure for removal of the stainless steel sutures Dr. Barial thought he had removed all of them, thus indicating negligence in overlooking the two not removed. Regardless of what implications the letters might have contained on this point, the evidence clearly establishes that prior to the surgical procedure for removal of the steel wire sutures, an X ray was made and that it revealed nine wire sutures. Dr. Barial therefore reopened the wound knowing that there were at least nine. His report of the surgical procedure in the hospital records specifically referred to the removal or eight wire sutures. His reason for not removing more and knowingly leaving at least one to remain was explained in keeping with professional judgment. Thus there clearly was no oversight or negligence in leaving one or more wire sutures in the patient.
It is significant that Dr. Isaacson, who was engaged by plaintiff to remove the two remaining sutures, reopened the wound for that purpose, having first determined by means of X ray that two wire sutures remained, did not remove but one. He, too, knowingly left one suture, as defendant Dr. Barial had done, and for the same reason in the exercise of his professional judgment. The reasons given by both Dr. Barial and Dr. Isaacson were that there was a considerable amount, of calcification in the wound which they attempted to remove and that the remaining sutures were so imbedded in plaintiff’s tissue that it would have, in their opinion, been more damaging to continue to probe the wound in search of the sutures, than to leave them. Furthermore, neither of them was entirely convinced that the sutures were the sole cause of plaintiff’s pain and discomfort; that it might have resulted from the calcification and rigidity of the wound. The calcification, it was explained, was the result of certain pathological conditions, not ordinarily expected but not so unusual as to indicate improper surgical procedure.
At this point we must note that the plaintiff appears to base his appeal not so much on the issue of malpractice as on the contention that the trial judge made prejudicial and detrimental remarks in the presence of the jury which had the effect of denying plaintiff a fair and impartial trial of his cause.
These comments and remarks pertained to the plaintiff’s attempts to introduce the aforementioned letters, or reports, of Dr. Barial regarding the removal of the steel sutures from plaintiff and to a later attempt to introduce a deposition of the defendant doctor. The judge could see little if any relevance between these documents and any act or acts of malpractice on the defendant doctor’s part. The judge was of the opinion that either the doctor had or had not done certain acts during his surgical procedures upon plaintiff which constituted malpractice and what he might have stated that he had done or had not done was not relevant to the issue of malpractice.
*884 Thus when the plaintiff attempted to introduce the letters, or reports, the judge did make several comments regarding relevancy. The plaintiff points in particular to the following statements by the trial judge and colloquy between him and the plaintiffs counsel wherein the plaintiff contends the judge’s remarks were improper and prejudicial:
“BY THE COURT:
Frankly, I’m sitting here very patiently listening to this. As I understand, this is a suit for malpractice.
Now, what reports he made to his employer, I cannot for the life of me see how that has anything to do with malpractice, either he did something wrong, he did medically wrong or he didn’t.
Now, what reports he made, how can that possibly affect the malpractice case?
I don’t understand it, but if you have no objection, let the documents be admitted and filed.
* * * * * *
“BY MR. KELLY:
* * * * ❖ *
We’re intending to show that Dr. Bar-ial performed a third operation for the purpose of removing wires and I think all this evidence is material to show that he was under the impression the wires had been removed until Mr. Britt went out and got himself a set of — independent set of x-rays and showed him they were not removed.
“BY THE COURT:
Well, I don’t know, I’m not going" to pass upon the question of malpractice at this time and I don’t know what you’re attempting to prove, but in order to give you the benefit of the doubt, I’m going to let that document go into evidence for whatever it’s worth.
The objection is overruled. I don’t think anything that the doctor would report to a third person would constitute malpractice, that’s the point that I’m trying to make to you.
“BY MR. KELLY:
No, sir, we’re not trying to show malpractice by what he reported to a third person.
“BY THE COURT:
Then I don’t know what relevancy the reports have.
“BY MR. KELLY:
Well, as I explained, sir, we’re kind of sure that the doctor had reported over and over again that he had removed the wires.
Now, we will go on with the evidence to show the wires were not removed.
“BY THE COURT:
I think the doctor has testified on the witness stand that he had not removed all the wires. I don’t see why you have to cross examining [sic] on that, he’s already admitted that, you’re trying to prove that he didn’t and he says he didn’t.
I think it’s all irrelevant, he admitted he didn’t take it all out.
“BY MR. KELLY:
He says it now, sir, but—
“BY MR. BROWNE:
May it please the Court, I object to his statements.
“BY THE COURT:
What’s the difference if he says it now or then, he said it before the jury, he didn’t remove all the wires and you’re simply trying to prove he did’nt remove all the wires, which he admitted, that’s the point, you’re just wasting time.”
*885 When plaintiff’s wife was on the witness stand being cross-examined as to what the defendant doctor allegedly told her the following remarks were made:
“BY MR. KELLY:
I’m going to object to that, he’s asking this poor woman what she saw on an x-ray; you and I can’t tell.
“BY THE COURT: •
She’s on cross examination. Frankly, what she did and what she saw, whether the doctor told her anything or not is all so immaterial, it’s just irrelevant, it’s a waste of time to find out about any of it.
She’s testified to nothing, I don’t know why the cross examination, but I can’t stop it.”
And finally, concerning the deposition allegedly given by defendant doctor some two days before trial, these were the comments:
"BY MR. KELLY: '
Well, let’s excuse the jury.[1]
“BY THE COURT:
You object to the introduction of the deposition ?
“BY MR. BROWNE:
Your Honor, I inquire as to why? There’s been no basis laid for the introduction of the deposition.
“BY THE COURT:
Well, I’m going to agree with you, the offer of the deposition is objectionable, there’s no reason, the man took the witness stand and I don’t recall one single thing or one single time that he denied what was said in the deposition, when he was asked a question the only thing he did was explain it, but he didn’t deny anything that you read from the deposition or say, T didn’t say that.’
“BY MR. KELLY:
Your Honor, I beg to differ, sir, he definitely denied saying that there was an exceptional amount of calcification present when it’s right here in his deposition.
“BY THE COURT:
The objection is sustained. I’m not going to permit a deposition in this record, the man has testified and there’s nothing—
“BY MR. KELLY:
At this time I’m going to move for a mistrial and I think Your Honor made prejudicial remarks.
“BY THE COURT:
Denied.
“BY MR. KELLY:
And I move I be permitted to make an offer of proof of this deposition.
“BY THE COURT:
That is a right which you have, you can make a proffer of proof of anything, you can make a proffer of proof that tomorrow is Christmas Eve, as long as I don’t admit it in the record.”
From the above excerpts from the transcript, we can see that the trial judge did make several comments, in the presence of the jury, which tended to reflect his opinion as to the wisdom and efficacy of the plaintiff’s repeated attempts to get the letters, or reports, and deposition of Dr. Barial before the jury. However, we certainly do not feel that these comments had the force of damaging the plaintiff’s case and denying him a fair and impartial trial of his cause. Comments by the trial judge which do not prejudice *886 the jury against one of the parties are not improper and do not constitute ground for reversal. Gryder v. Travelers Insurance Company, 193 So.2d 532 (La.App. 1st Cir. 1966).
Certainly as to the relevance of the much-discussed letters, or reports, and deposition, the contents of which we can only infer from the statements of counsel as they were not included in the record and are not now before us, we are of the same opinion as the trial judge. We can see no bearing which they might have on plaintiff’s case for malpractice.
For the foregoing reasons the judgment of the lower court dismissing plaintiff’s demands are affirmed at appellant’s cost.
Affirmed.

. There is nothing in the record to indicate that the jury was excused and did not hear the remarks which followed.