206 So.2d 106 (1968)
Weldon VIATOR
v.
Thomas N. GILBERT, Coating Specialists, Inc., Westchester Fire Insurance Company and John E. Wilkinson.
No. 2806.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 1968.
Rehearings Denied February 5, 1968.
Writs Refused March 25, 1968.
Writ Granted March 25, 1968.
*107 Joseph A. Koury, Lafayette, for plaintiff-appellee.
Schoemann, Gomes & Ducote, Monte J. Ducote, New Orleans, for third-party plaintiffs-appellees.
Schoemann, Gomes & Ducote, Monte J. Ducote, New Orleans, for defendants-appellants-appellees.
Ernest A. Carrere, Jr., L. Howard McCurdy, Jr. and James L. Selman II, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for third-party defendant-appellant.
James C. Murphy, Jr., of Sessions, Fishman, Rosenson, Snellings, & Boisfontaine, New Orleans, for defendant-third party, defendants-appellees.
Ben C. Toledano, of Porteous & Johnson, New Orleans, for defendant-appellee and third-party defendant-appellee.
Before YARRUT, CHASEZ and JANVIER, JJ.
Writs Refused Gilbert and Travelers Ins. Co. March 25, 1968.
Writ Granted In Part Viator March 25, 1968.
YARRUT, Judge.
This suit arose as a result of a four-car collision on Highway 90 three miles east of Boutte, Louisiana, on February 5, 1965 at about 6:00 P.M. Although there is some factual dispute, the following is clear from the record. All vehicles were proceeding in a westerly direction. John E. Wilkinson, the driver of the first car, who was intoxicated, *108 attempted to make a U-turn in the left lane of the highway at what he erroneously thought was a crossing in the neutral ground, and turned across the neutral ground itself. As a result, Mr. Wilkinson's car was stalled on the neutral ground with its rear portion extending into the left lane of traffic.
The driver of the second automobile, Gilman Provost, observing Mr. Wilkinson's position, brought his car to a gradual stop 12 to 18 feet behind it. About 30 or 40 seconds later, Mr. Provost was hit in the rear by a car driven by Thomas N. Gilbert, which propelled Mr. Provost's car into Mr. Wilkinson's car and knocked Mr. Wilkinson's car across the highway. Very shortly thereafter Mr. Gilbert's car, in turn, was struck in the rear by the one driven by Thadeus Martin, again hitting the Provost vehicle.
Plaintiff, a passenger in the Provost automobile, sued Mr. Gilbert; his employer and owner of the vehicle, Coating Specialists, Inc.; its insurer, Westchester Fire Insurance Company, and Mr. Wilkinson. Mr. Gilbert, Coating Specialists, Inc. and Westchester Fire Insurance Company filed a third-party petition for contribution against State Farm Mutual, Mr. Wilkinson's insurer; Universal Underwriters Company, Mr. Provost's insurer; and Travelers Insurance Company, Mr. Martin's insurer.
This case was tried before a jury which found the following: (1) That Mr. Wilkinson was negligent, but that his negligence was not the proximate cause of the accident; (2) That Mr. Provost was not negligent; (3) That Mr. Gilbert was negligent and that his negligence was the proximate cause of the accident; (4) That Mr. Martin was negligent, and that his negligence was a proximate cause of the accident, and (5) Plaintiff had suffered $59,200.00 damages.
Pursuant to the findings of the jury the judgment of the trial judge was as follows: An award in favor of Plaintiff against Westchester Fire Insurance Company, Coating Specialists, Inc. and Thomas N. Gilbert, in solido for $59,200.00; a judgment in favor of the above-named Defendants for contribution by Travelers Insurance Company for its virile share, not to exceed the policy limits; a dismissal of Plaintiff's demands against Mr. Wilkinson; and a dismissal of the demands of Westchester Fire Insurance Company, Coating Specialists, Inc. and Mr. Gilbert against State Farm Mutual Insurance Company and Universal Underwriters Company. From this judgment Westchester Fire Insurance Company, Coating Specialists, Inc. and Travelers Insurance Company have appealed. Here in open court all parties agreed to abandon all claims they made against Universal Underwriters Insurance Company, the insurer of Gilman Provost.
Appellants allege there should have been a mistrial because of certain irregularities to wit: (1) That although they were challenged for cause, three jurors who were impaneled were acquainted with one of Plaintiff's attorneys. The applicable article, LSA-C.C.P. art. 1765 provides, inter alia:
"A juror may be challenged for cause based upon any of the following: * * (3) When the relations whether by blood, marriage, employment, friendship, or emnity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict; * * *."
The trial judge evidently did not believe that the relationship was such that it would have influenced the jurors in coming to a verdict, and there has been no showing that this would have been the case; (2) That the father of one of Plaintiff's attorneys shook hands with some of the jurors during the recess. We find this charge to be insufficient to declare a mistrial; (3) That Plaintiff's attorney placed a blackboard with some figures on it in the jury room without having them properly introduced into evidence. We find this defect was cured by *109 the prompt removal of the blackboard and the court's instructions that the jury disregard any figures which it might have seen. In any event, as this Court can review the law and the facts, and it would be an undue burden to remand this case because of the irregularities complained of by the Appellants, we have decided to consider and decide the case on the merits.
With regard to liability, the questions presented are: (1) Whether the negligence of John E. Wilkinson was a proximate cause of the accident; (2) Whether Thomas N. Gilbert was negligent and, if so, was his negligence a proximate cause of the accident, and (3) Whether Thadeus Martin was negligent and whether his negligence was a proximate cause of the accident.
While there can be no doubt of Mr. Wilkinson's negligence, it is undisputed that Mr. Provost was able to come to a gradual stop behind him and avoid a collision, and that all of the impacts occurred after this stopping. When the lead vehicle makes a sudden stop, or one in order to execute an illegal maneuver, but the operator of a second vehicle is able to bring his car to a stop without a collision, the first driver is not liable if a third vehicle collides with the second. See Gandy v. Arrant, La.App., 50 So.2d 676; Hernandez v. Pan American Fire and Casualty Co., La.App., 157 So.2d 923. In all the cases relied upon by Appellants on this particular point, the second vehicle actually collided with the first "stopped" vehicle. We find, therefore, that the jury was correct in concluding that Mr. Wilkinson's negligence was not a proximate cause of the accident.
As for the negligence of Mr. Gilbert, he testified he saw the tail lights on Mr. Provost's automobile at a distance of from 100 to 200 yards when he started to slow his rate of speed from 65 miles an hour; and yet was unable to stop in time to avoid the collision. The investigating officer testified Mr. Gilbert told him that he "plowed" into Mr. Provost's car.
Mr. Martin testified that as he was passing a truck at a speed of 55 to 60 miles per hour, he saw the brake lights of the Gilbert automobile flash at a distance of about 150 to 200 feet ahead of him; that he promptly applied his brakes, but was unable to stop, and his car hit the Gilbert car. The investigating officer testified the Martin vehicle skidded 45 feet. It is well settled that the operator of a following vehicle must keep his vehicle under control, closely observe the forward vehicle; and if a rear end collision occurs, he is presumed to be negligent. Bouis v. Employers Liability Assurance Corporation, La.App., 160 So.2d 36; Foster v. Phoenix Insurance Company, La.App., 146 So.2d 647; Poleman v. Employers Liability Assurance Corp., La.App., 164 So.2d 630; Cain v. Lumbermens Mutual Casualty Company, La.App., 178 So.2d 483.
Neither Mr. Gilbert nor Mr. Martin has overcome this presumption of negligence. Although both Plaintiff and Mr. Provost testified that they felt the impact of the Gilbert vehicle to a greater extent than they felt the impact of the Martin vehicle, we conclude, as did the jury, that both collisions contributed to Plaintiff's injuries. In this regard Plaintiff gave a statement to Dr. Blaise Salatich in which he described the effects of the impact of the Martin vehicle as landing him on the floor of his car, and causing him to strike the right said of his chest quite hard against the dashboard, and also causing his head, neck and back to be jerked and snapped very hard. Plaintiff testified that the history which he gave Dr. Salatich was correct.
With regard to the extent of Plaintiff's injuries, Plaintiff himself and four physicians testified. Plaintiff testified that he suffered three back injuries prior to the one received in the collision. The first was in September, 1959, when he was working in an oil field. At that time he consulted Dr. William Meuleman, an orthopedic surgeon, who discovered that Plaintiff had what is known as a "congenital back" due to the fact that he had an extra vertebrae in the *110 lumbo sacral area. On December 21, 1961, Plaintiff reported to Dr. Meuleman that his back "gave way" while he was lifting some pipe in an oil field. On August 9, 1962, he reported he was again injured while lifting sacks of jell working as a roughneck in an oil field. On previous occasions Dr. Meuleman suggested that Plaintiff undergo a spinal fusion, which he did in September of 1962. Throughout 1962, 1963 and part of 1964 Plaintiff complained of low back pain to Dr. Meuleman, who concluded that the fusion was probably not successful. After January 1964, Plaintiff did not consult Dr. Meuleman again until May, 1965, some four months after the accident. Although Plaintiff complained of neck pain, Dr. Meuleman's examination failed to disclose any evidence of neck injury. His symptoms as far as his lower back was concerned were not significantly different than those found in the last 1964 examination.
After the accident, Dr. Michael Boustany, a general surgeon, was the first to examine Plaintiff on February 8, 1965. Dr. Boustany testified that Plaintiff complained of headaches, dizziness, pains in the neck and low back, and that his examination revealed presence of spasm in the cervical musculature and lumbar area, for which he hospitalized Plaintiff for six days and also prescribed medication and diathermy treatments. The x-rays which he had made showed there was a separation in the vertebrae at the site of the previous operation, and that the spinal fusion was disrupted. Although he was unable to say whether or not the accident was responsible, Dr. Boustany testified he was inclined to believe that the accident reaggravated the pre-existing graft defect. Plaintiff consulted Dr. Thomas C. Bush, a general practitioner, on September 10, 1965, at which time Dr. Bush diagnosed Plaintiff's condition as a severe low-back sprain which aggravated a previous back condition. He also testified that there was evidence from the x-rays that the fusion was not solid at the present time. However, he could not testify as to whether the accident was responsible for disrupting the fusion, or whether the fusion had never taken place as Dr. Meuleman had concluded. He estimated Plaintiff would have a permanent 25% to 30% disability of the back.
Dr. Blaise Salatich, orthopedist, first examined Plaintiff June 8, 1966. He diagnosed Plaintiff's injuries as "a whiplash type injury to the cervical area, possible lower cervical intervertebral disc involvement whiplash low back injury and cerebral concussion of short duration." From x-rays he determined there was a loss of continuity of the bone graft fusion which had been performed in 1962 but was unable, as were Doctors Bush and Boustany, to determine whether the accident had caused the actual break in the fusion.
From all the evidence we conclude Plaintiff suffered a severe lumbo sacral sprain, a moderate cervical sprain, and aggravation at the site of an attempted bone fusion which had never properly healed. Although he will have a permanent 25% to 30% disability of the back, Plaintiff did have considerable back disability prior to the collision.
With regard to quantum, we feel an award of $59,200.00 is manifestly excessive because of Plaintiff's previous physical condition, and his previous earning record. The latter will be discussed below.
Recent awards for permanent back injuries have been in the general area of $20,000.00. See Reeves v. State, La.App., 80 So.2d 206; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Robnett v. The Great American Insurance Company of New York, La.App., 187 So.2d 152, and Waller v. King, La.App., 188 So.2d 231. In concluding that an award of $20,000.00 for pain and suffering would be adequate, we are cognizant of the rule that each case must be decided on the facts and circumstances surrounding the particular injury involved, and awards in similar cases are relevant solely to whether the awards of trial judges and juries are so excessive or inadequate as to constitute an abuse of the wide discretion *111 vested in them. Gaspard v. LeMaire, supra; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127.
However, in determining the award here for pain and suffering we are relying primarily on the peculiar facts of the instant case, particularly that Plaintiff had a previous serious disability of the back, and that the accident here was merely an aggravation thereof. A more difficult problem is presented regarding the award for loss of wages. From September 1959 until September 1964, Plaintiff held a few jobs intermittently for only several days at a time. He did however, work as a dump-truck driver from September 18, 1964 through December 27, 1964, earning during that period $967.60. He also worked again at the same job from January 10, 1965 through January 24, 1965 during which time he earned $99.00. He was not working a week previous to the accident because he said that work had been very slow. Mr. John W. Casey, personnel director of the company for which Plaintiff worked, testified he was not prepared to say whether or not Plaintiff would have a job to return to. Doctors Bush, Boustany and Salatich testified they did not think Plaintiff would be able to return to work as a dump-truck driver. We are mindful of the fact that Plaintiff is only 34 years old and has done manual labor throughout most of his working life. However, considering the sporadic nature of his employment, we feel that an award of $7,000.00 for future loss of earnings is adequate.
With regard to special damages, although Plaintiff claimed considerably more, there are only two bills in the record, one $35.00 hospital bill and another $235.00 bill for diathermy treatments. Therefore we can allow only $270.00 for medical expenses.
In regard to the judgment, we note that Coating Specialists, Inc. was cast with its insurer, Westchester Fire Insurance Company, and Mr. Gilbert. As Mr. Gilbert was driving home from work at the time of the accident, he clearly was not within the scope of his employment. Wills v. Correge, La.App., 148 So.2d 822, and the cases cited therein. Therefore, Coating Specialists, Inc. can not be held liable. Although the insurance policy is not in evidence, it has been admitted by counsel for Westchester Fire Insurance Company that the policy contains an omnibus clause, and that Mr. Gilbert is an insured under the policy. Therefore, the judgment is amended to reduce the award to $27,270.00, and to dismiss the suit as to Coating Specialists, Inc. As amended the judgment is affirmed; all taxable costs to be paid by the Appellants.
Judgment amended and affirmed.