409 So.2d 1316 (1982)
Martha LAWRENCE, Individually and as Administratrix of the Estate of her Minor Son, Bruce Lawrence, Plaintiff-Appellee,
v.
GRANT PARISH SCHOOL BOARD, et al., Defendants-Appellants.
No. 8594.
Court of Appeal of Louisiana, Third Circuit.
February 10, 1982.
Writ Denied April 15, 1982.
*1317 Trimble and Associates, Lon P. Wilson, Bolen & Erwin, John B. Honeycutt, Jr., Alexandria, for defendants-appellants.
Chris J. Roy, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, DOUCET and LABORDE, JJ.
LABORDE, Judge.
This is a suit for damages against the Grant Parish School Board (School Board) and two of its employees: Reed Perriloux (principal of Dry Prong High School) and Bernard Harrison (school teacher and welding shop instructor of Dry Prong High School). The damages arise from an accident involving student, Bruce Lawrence who severely cut his hand on an electric power saw during welding class at Dry Prong High School. His mother, Martha Lawrence, instituted this suit individually and as administratrix of her minor son's estate.
The negligence of Mr. Perriloux and Mr. Harrison was tried to a jury. The jury determined that Mr. Perriloux was not negligent but could not reach a determination as to Mr. Harrison.[1]
The negligence of the School Board was tried to the judge who held the School Board liable for its own negligence and vicariously liable for the negligence of its employees; Mr. Perriloux and Mr. Harrison. The judge also held that Bruce Lawrence was free from fault after concluding that he was neither contributorily negligent nor had he assumed the risk. Accordingly, the trial court rendered judgment in plaintiffs' favor against the School Board awarding Martha Lawrence $1,053.24 individually and $70,000.00 as administratrix of the estate of her minor son. The School Board appealed. We affirm.
The issues raised on appeal concern whether the trial court erred: in holding the School Board liable for both its own acts of negligence and for the negligent *1318 acts of its employees; in holding that Bruce Lawrence was not contributorily negligent; in holding that Bruce Lawrence had not assumed the risk; in awarding excessive damages; and in not allowing the School Board a jury trial.

FACTS
The evidence presented at trial discloses the following facts. Bruce Lawrence was a student at Dry Prong High School. At the time of the accident young Lawrence, age 14, was attending an agriculture class wherein the students were learning welding. The classroom was situated in a building containing numerous welding booths. Also contained in the building was power equipment. This equipment had been stored in this building for a period of time prior to the accident under the authority of the Grant Parish School Board. A power saw was stored in the back of the building easily accessible to any of the students. The evidence presented in court established that the saw was used periodically by Mr. Harrison and other students. Immediately prior to this accident, the saw had been used by another student in Bruce's class. At the time of the accident the saw had an extension cord attached to it which was plugged into the wall socket. The blade of the saw had been cranked up, but the safety guard had not been reinstalled. The testimony established that the safety guard was not on the saw when it was stored by the School Board. Mr. Harrison and other students testified that at the beginning of the two six-weeks class sessions, the students were told not to use the power equipment. Additionally, at the beginning of the class session the students were given a list of rules, over 200 in number, regarding the use of equipment in the class.
This accident occurred while Bruce Lawrence was using the power saw during the class period. He was attempting to cut a piece of wood when either the wood jumped up, or he cut through the wood, causing his hand to come into contact with the saw blade. The blade severed the index finger of his right hand at the proximal phalange and further caused damage to his fingers, hand and thumb resulting in several surgical operations.
The evidence also established that Bernard Harrison, the instructor of the class, was outside the class at the time of the accident. As to what Mr. Harrison was doing outside the class the evidence is disputed. However, it is clear that he was outside the class at the time of the accident, and also that he frequently left the class at other times.

FAULT OF THE SCHOOL BOARD
The fault of the School Board can be predicated either on its own acts or failure to act, Civil Code Articles 2315 and 2316, or under the doctrine of respondeat superior from the acts of its employees, article 2320, Nash v. Rapides Parish School Board, 188 So.2d 508 (La.App. 3rd Cir. 1966).

Negligence Liability of the School Board
We begin with a discussion of the School Board's liability predicated either on its own acts or failure to act.
The acts of the School Board were that of storing the power saw in the agriculture class room where 13-15 year old students attended classes, in an operative condition and without any protective safety guard or warning signs.
As stated in Capers v. Orleans Parish School Board, 365 So.2d 23, 24 (La. App. 4th Cir. 1978):
"Tort liability is based on the existence of a duty and the breach thereof which causes damage. The standard of care for school teachers and administrators is that of a reasonable person in such a position acting under similar circumstances. Reasonable care includes protecting against unreasonable risk of injury from dangerous or hazardous objects in the school building and on the grounds." (emphasis supplied)
The law is well settled that in order for a school board to be liable it must have had actual knowledge or constructive knowledge of a condition unreasonably dangerous *1319 to the children under its supervision. Ardoin v. Evangeline Parish School Board, 376 So.2d 372 (La.App. 3rd Cir. 1979). The school board had actual knowledge of the existence of the sawit ordered its storage. The record shows that it knew of the dangerous condition in which the saw was stored. It knew young children were present in this class daily, and, therefore, owed a duty to exercise a greater degree of care towards these students. Prier v. Horace Mann Insurance Company, 351 So.2d 265 (La.App. 3rd Cir. 1977); writs refused, 352 So.2d 1042 (1977). Despite the duty, the saw was stored with a blade, without a safety guard, in an operative condition in a classroom in which students were attending. These actions by the School Board constituted a breach of its duty to the minor which was a cause of his injury.
We agree the School Board might have prevented this accident by either properly storing the saw outside of the contact of the students, removing the saw blade, or installing a locking mechanism to keep the machine from being turned on without a key, or placing a barricade around the power saw. A rope with a keep out sign would have been the least it should have provided. It failed to exercise any of these duties, thus becoming liable for the injuries sustained by Bruce Lawrence through its own negligence.
The School Board's argument that it was free from negligence lacks merit.

Respondeat Superior Liability of the School Board
We next consider whether the record supports the trial judge's conclusion that the School Board is also liable under the doctrine of respondeat superior.
Bernard Harrison was Bruce's teacher. He taught an agriculture class which was learning how to use welding equipment. The class involved two six weeks sessions in which the first two weeks of the class were spent in a classroom wherein the students were given numerous rules and instructed on the use of the welding equipment. As a prerequisite to entering the shop and using the welding equipment the students were required to copy certain rules pertaining to the welding equipment and then sign them. The students were told not to use the power saw and were never instructed in its use.
At the time of the accident, Bernard Harrison was not present in the classroom. He testified that he frequently left the shop area while the welding machines were in use. He would often leave to get scrap metal or to try and catch students outside smoking. When he would leave the shop there was no other teacher present. The students were left alone, unsupervised, with welding equipment in use, and power equipment present.
The record shows that Bernard Harrison was aware the power saw had been used. In fact he had used it himself on several occasions. Bernard Harrison stated that the saw was unplugged, with the blade lowered, and that an extension cord was needed to plug the cord into a socket. However, when Bruce Lawrence sustained his injury, he simply had to flip a switch to turn on the saw. Another student had used the saw prior to the plaintiff's using itall the while Bernard Harrison was outside the classroom.
The acts of Bernard Harrison were clearly a legal cause of the accident. Had he been present in the classroom the accident probably would not have happened.
Bernard Harrison as a teacher owed a duty to the minor to supervise him at all times during the class period due to the presence of inherently dangerous equipment.[2] Bernard Harrison breached this duty when he left the shop area leaving the students unsupervised. He knew a power saw was present in the classroom. He further *1320 knew that it had been used from time to time. He also knew that the safety guard was not on the saw. He testified that he did not know the blade on the power saw had been positioned ready for use or that an extension cord was already attached and plugged in. He should have observed this. These acts and his failure to act to protect the minor constitute fault on behalf of Harrison causing injury to Bruce.
Principal Reed Perriloux was also aware that the saw had been stored in the welding shop. He knew that it was in a working condition. He further knew or should have known that 13 and 14 year old children were apt to use the saw. As principal of the school he owed a duty to the students to see that the saw was stored either in a safe manner, or stored in a place or barricaded whereby students could not get hurt. He failed to discharge this duty.
There are many things defendants could have done to protect Bruce and other students, some of which were mentioned previously. The cost of these protective measures is negligible and there is no excuse for the inactions of the defendants. The School Board's argument that the trial court erred in holding it vicariously liable lacks merit.

FAULT OF BRUCE LAWRENCE
The School Board contends that plaintiffs should be barred from recovery because Bruce was contributorily negligent or he had assumed the risk.

Contributory Negligence
In support of its contention that Bruce was contributorily negligent, the School Board relies heavily on the fact that Bruce was specifically instructed not to use the power equipment.
A 14 year old boy is certainly capable of contributory negligence. However, the application of the doctrine is not a mechanical rule which can be applied to determine the capability of a child to observe and avoid danger.
"... A child is not held to the same degree of care as an adult. Rather, the test is whether the particular child, considering his age, background, and inherent intelligence, indulged in the gross disregard of his own safety in face of known, understood, and perceived danger." (citations omitted) Simmons v. Beauregard Parish School Board, 315 So.2d 883, 888 (La.App. 3rd Cir. 1975), writ refused, 320 So.2d 207 (1975).
Bruce Lawrence was a 14 year old who had never before operated a power saw, and was never instructed in the operation of one. The school did not instruct the pupils why they were not to use the power equipment. Pupils are told not to use a lot of equipment of the school, as the athletic equipment and other things. They could not use the simple tools without checking them out of an adjoining room. The prohibition did not carry the reason that they could be injured because they were not trained to use the power equipment. The record supports that Bruce was told not to use the power saw, however we agree with the lower court that mere instructions alone to a 14 year old not to use a power saw, which is easily accessible and can be turned on by simply flipping a switch, are insufficient to categorize the plaintiff's conduct as contributory negligence. Bruce Lawrence's only wrong was to use a saw he was told not to use. This simple disobedience does not constitute contributory negligence. The duty of the School Board encompassed acts such as those of Bruce Lawrence and his classmate. It is foreseeable that kids will do things they are told not to do. The School Board owed a duty to all the students not to store a dangerous power saw in an area that was easily accessible to the students. Prier v. Horace Mann Insurance Company, supra. The School Board knew or should have known that someone would attempt to use the saw as the plaintiff did.

Assumption of Risk
The School Board's defense of assumption of risk is easily disposed of. Since Bruce Lawrence had never before used a power saw nor was he instructed in its use, it cannot be said that he assumed any known risk by his actions.

*1321 "... The defense of assumption of risk is in fact quite narrowly confined and restricted by two requirements: first, that plaintiff must know and understand the risk he is incurring, and second, that his choice to incur it must be entirely free and voluntary. Langlois v. Allied Chemical Corporation, 249 So.2d 133 (La.1971); Pollard v. Roberts, 306 So.2d 801 (La. App.2d Cir. 1975).
We agree with the lower court, and the record supports, that Bruce was not guilty of any fault sufficient to bar his recovery.

QUANTUM
The School Board contends that the general damages awarded plaintiff are excessive and asks this court to reduce them.
LSA-C.C. art. 1934(3) provides that in the assessment of general damages "much discretion" must be left to the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979).
The Louisiana Supreme Court, in Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976) stated on page 335:
"We do reemphasize, however, that before a Court of Appeal can disturb an award made by a trial court that the record must clearly reveal that the trier of fact abused its discretion in making its award. Anderson v. Welding Testing Laboratory, Inc. [304 So.2d 351 (La.1974)], supra; Bitoun v. Landry [302 So.2d 278 (La.1974)], supra; Fox v. State Farm Mutual Automobile Ins. Co. [288 So.2d 42 (La.1973)] supra; Walker v. Champion [288 So.2d 44 (La.1973)], supra. Only after making the finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that court. Bitoun v. Landry, supra; Spillers v. Montgomery Ward & Company, Inc., supra. It is never appropriate for a Court of Appeal, having found that the trial court has abused its discretion, simply to decide what it considers an appropriate award on the basis of the evidence."
The School Board cites a number of cases in its brief which it contends show an abuse of the trial court's "much discretion". Although the cases cited concern actions brought by plaintiffs with injuries somewhat similar to those suffered by Bruce in this case, the initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person is a clear abuse of the trier of fact's "much discretion", LSA-C.C. art. 1934(3) and Reck v. Stevens, supra.
The evidence shows that after the accident, it was between one and two hours before Bruce was taken to the hospital. He testified that he experienced severe pain during this period. Bruce's index finger was completely severed and had to be picked up from the floor and taken to the hospital. The saw blade made deep cuts into Bruce's thumb, fingers and hand. Plaintiff was a fourteen year old child at the time of the accident. For the rest of his life, Bruce will have a permanent disfigurement and impairment of his right hand. His thumb is pinned and thus restricts his motion. According to the findings of Dr. Ray Beurlot, an orthopaedic who examined Bruce, Bruce has a 50% disability of his right hand. The record shows that Bruce is right-handed.
Bruce's SRA test scores were introduced into evidence. They indicate that he is well below the intelligence norm of others his age, a factor considered and relied upon by the lower court in concluding that Bruce suffered a diminished earning capacity.
Based on the above, we find no clear abuse of the trial court's "much discretion" in awarding $70,000.00 in general damages.

THE SCHOOL BOARD'S RIGHT TO A JURY TRIAL
The School Board contends that the trial court erred by not allowing it a jury trial as requested.
LSA-R.S. 13:5105 states:

*1322 "No suit against the state or a state agency or political subdivision shall be tried by jury."
The Louisiana Supreme Court had the opportunity to review this article in the very recent case of Descant v. Rapides Parish Police Jury, ___ So.2d ___ (La.1982), rendered January, 1982. The Supreme Court held that the language of LSA-R.S. 13:5105 clearly prohibits a jury trial where such an entity as described in the statute is involved. The School Board is such an entity. Hence, we find no error in the trial court's denial of its request for a jury trial.
For the above reasons, the judgment appealed from is affirmed. Costs in the amount of $3,797.80 are assessed against defendant-appellant, Grant Parish School Board, as provided by law.
AFFIRMED.
DOMENGEAUX and DOUCET, JJ., concur in the result.
NOTES
[1] The trial judge signed a judgment absolving Mr. Perriloux of any fault and further declared a mistrial as to the fault of Mr. Harrison.
[2] It has repeatedly been held that the fact that each student is not personally supervised every moment of each school day does not constitute fault on the part of the School Board or its employees. Partin v. Vernon Parish School Board, 343 So.2d 417 (La.App. 3rd Cir. 1977). However, we are faced here with a failure not only to properly supervise, but to even be present, when students are engaged in the use of dangerous equipment.