419 So.2d 1307 (1982)
Rowena SPENCER, M.D.
v.
CHILDREN'S HOSPITAL, et al.
No. 12924.
Court of Appeal of Louisiana, Fourth Circuit.
September 1, 1982.
Rehearing Denied October 22, 1982.
*1308 John R. Martzell, A. D. Freeman, New Orleans, for plaintiff-appellant.
A. R. Christovich, Jr., New Orleans, Corinne A. Morrison, Peter T. Dazzio, W. Shelby McKenzie, Nancy Tyler, Baton Rouge, Gordon F. Wilson, Jr., New Orleans, for defendants-appellees.
Before WARD, WILLIAMS and BYRNES, JJ.
BYRNES, Judge.
Dr. Rowena Spencer, Plaintiff-Appellant herein, appeals from a judgment of the District Court dismissing her suit with prejudice. The factual context in which this appeal arises is as follows:
Appellant is a pediatric surgeon of un-questioned skill. She is one of only two Board Certified Pediatric Surgeons in Louisiana. She has practiced in association with a number of hospitals throughout the state. In July, 1977, Dr. Spencer was suspended from the exercise of staff privileges at Childrens Hospital in New Orleans, Louisiana. One reason for this suspension was a threat by Dr. Spencer to finance a law suit against the Hospital on behalf of one of her patients whom she felt had been negligently cared for by the hospital staff. Another, more important reason, was Dr. Spencer's inability to work with members of the staff, particularly nurses. At the time of her suspension, 35% of the nursing staff was threatening to resign due to Dr. Spencer's abusive treatment.
*1309 Several days later the suspension was lifted on the condition that Dr. Spencer take a two month sabbatical and meet with an ad hoc committee of staff members to negotiate "conditions under which you will resume your practice at Children's Hospital". This agreement, known as the Cain agreement, was the result of several hours of `collective bargaining' between Dr. Spencer and James Cain, then President of the Board of Trustees of the Hospital. When Dr. Spencer met with the ad hoc committee in October she refused to consider any conditions. She contended that the Cain agreement merely required her to meet with the committee as the sole condition for her return to the staff. Despite several subsequent meetings no agreement was ever reached.
During this period Dr. Spencer made the routine annual application for staff privileges which is required at Children's Hospital and many other hospitals around the state. Her application was understandably denied, given the continued impasse which existed between Dr. Spencer and the administration and staff of the hospital.
Dr. Spencer then filed suit for damages and a preliminary injunction prohibiting Children's Hospital from denying her staff privileges. The trial on Dr. Spencer's petition was held in January, 1978. This proceeding was exceedingly thorough, taking seven full trial days. The trial court denied the plaintiff's petition in a strongly worded opinion which characterized Dr. Spencer's actions in dealing with the hospital staff as "unreasonable, over-bearing, extremely demanding, offensive, rude, insulting and un-warranted." Dr. Spencer appealed, and this court affirmed in another strongly worded opinion which concluded that "any harm plaintiff has suffered appears to have been entirely her own doing." This court further found that, "Dr. Spencer does not have staff privileges at Children's Hospital because she voluntarily left, pursuant to the Cain agreement, which stated she could not return until conditions were agreed upon. She has never agreed to anything ... Dr. Spencer was not un-fairly, illegally, or un-constitutionaly dealt with by the hospital or its staff. She simply has not discharged the obligation which she voluntarily accepted." (referring to the Cain agreement)
This cause came to trial on the merits on January 14, 1980. By January 31, 1980, Dr. Spencer had presented all of her evidence with the exception of her own testimony and that of her C.P.A. Court was adjourned early the day of the 31st, on the suggestion of Dr. Spencer's counsel, to allow the parties one final opportunity to reach a compromise. While there is some conflict as to what occurred thereafter, this much is clear; Dr. Spencer absolutely refused to compromise her claim despite her own counsel's recommendation that such a move would be in her best interest. At this point Dr. Spencer became very upset. She returned home and took a number of pills in an apparent attempt on her life.
When Dr. Spencer failed to appear in court the next morning her counsel informed the court that she was "ill in bed", and requested a continuance until the following Monday, February 4, 1980, which was granted. When Dr. Spencer once again failed to appear, the trial judge held a conference in chambers to ascertain the reason for Dr. Spencer's continued absence. At that time it was made known to the court that Dr. Spencer had attempted suicide and would be unavailable for an indefinite time. When it became clear that Dr. Spencer would not be able to appear for some time counsel for the defense moved that Dr. Spencer's prior deposition and her testimony from the injunction proceeding be used in lieu of her present testimony. Alternatively, defendant's counsel moved for a continuance. Dr. Spencer's counsel vigorously opposed both motions and moved instead for a mistrial.
Upon discovery of the attempted suicide the trial judge dismissed Dr. Spencer's suit, with prejudice, on the grounds of her deliberate non-appearance. Counsel for the plaintiff immediately applied for writs to this court. We annulled the trial court's judgment and remanded for an evidentiary hearing on the circumstances surrounding *1310 Dr. Spencer's non-appearance. The depositions of Dr. Spencer and Dr. Winn, her physician, were taken in anticipation of this hearing. After conducting the hearing ordered by this court the trial judge reinstated his original opinion with the following reasons: "Considering the depositions and the testimony as a whole the court is of the opinion that the attempt was deliberate, was made with the definite intent not to continue the trial."
We affirm the results reached by the trial judge but find error in his reasoning. To begin with, we must note that the trial judge is without power to dismiss a case on his own motion. Code of Civil Procedure Articles 1671 and 1672 deal with dismissals. Art. 1671 covers voluntary dismissal and reads as follows:
"A judgment dismissing an action without prejudice shall be rendered upon application of the plaintiff and upon his payment of all costs if the application is made prior to a general appearance by the defendant. If the application is made after a general appearance, the court may refuse to grant the judgment of dismissal except with prejudice".
The statute is clear that, while the judge has discretion in some cases to dismiss with or without prejudice, he must be acting on "application of the plaintiff". Art. 1672 deals with involuntary dismissals and states:
"A judgment dismissing an action shall be rendered upon application of any party, when the plaintiff fails to appear on the day set for the trial. In such case the court shall determine whether the judgment of dismissal shall be with or without prejudice."
Once again the legislative intent is clear; the judge may not act on his own motion, but only "upon application of either party".
These limitations are analogous to those applied to directed verdicts in that the court may not act on its own motion but only on motion of one of the parties. Pete v. NOPSI, 402 So.2d 807 (La.App. 4th Cir. 1982); Scholegel v. Robinson, 416 So.2d 366 (La. App. 4th Cir.), rendered 1982).
The plaintiff in this case argues that the trial judge had no such motion before him. He did, however, have before him the plaintiff's motion for a `mistrial'. This motion does not exist as a procedural device in civil cases in Louisiana. There is no mention of its use in the Code of Civil Procedure. We will not, however, assume that counsel for the plaintiff was making a meaningless motion. Code of Civil Procedure Art. 865 provides that:
"Every pleading shall be so construed as to do substantial justice".
The jurisprudence of this state has consistently held that the characterization of a pleading by it's author is not controlling. Pleadings are governed by their substance and not by their caption. Higdon v. Higdon, 385 So.2d 396, (La.App. 1st Cir. 1980); Louisiana Live Stock Sanitary Board v. Johnson, 372 So.2d 585, (La.App. 3d Cir. 1979); Weber v. Bon Marche Pharmacy, 378 So.2d 520, (La.App. 4th Cir. 1979); Cvitanovich v. Sorli, 347 So.2d 1204, (La.App. 1st Cir. 1977); Polk v. Hunt, 282 So.2d 614, (La.App. 1st Cir. 1973); Griffith v. Metry Cab Service, 266 So.2d 739, (La.App. 4th Cir. 1972); Moore v. Shell Oil Co., 228 So.2d 205, (La.App. 3d Cir. 1969); Succession of Smith, 247 La. 921, 175 So.2d 269, (1965)).
The trial judge has a duty to recognize the true nature of a pleading and treat it accordingly. C.C.P. Articles 854, 862, 865, Louisiana Live Stock Sanitary Board v. Johnson, supra, at 591. Fremin-Smith Services Inc., v. Saint Charles Parish Water District No. 1, 300 So.2d 514, (La.App. 4th Cir. 1974)
In this case the trial judge should have treated plaintiff's motion for a mistrial as a motion to dismiss without prejudice under C.C.P. 1671. Plaintiff's counsel opposed defendant's motion for a continuance, so this apparently was not the true object of his motion. Nor could counsel have intended to move for a new trial. That device is reserved for post-judgment pre-appeal situations. In the instant case a final judgment had not been signed when *1311 the motion was made and thus a motion for new trial would have been premature. C.C.P. Art. 1971 et seq. Borderlon v. Dauzat, 389 So.2d 820, (La.App. 3d Cir. 1980). Chamblee v. Chamblee, 340 So.2d 378 (La. App. 4th Cir. 1976)
The substance of plaintiff's motion clearly shows a desire to begin the trial anew at an undetermined time in the future when plaintiff's health would permit her to give testimony. Voluntary dismissal under Code of Civil Procedure Art. 1671 is the only procedural device by which plaintiff could accomplish this goal in a civil trial. Accordingly we will treat defendant's motion for a mistrial as a motion for voluntary dismissal under C.C.P. 1671.
The next issue presented for our consideration is whether or not the trial judge erred in ordering the dismissal with prejudice. C.C.P. 1671 clearly and unambiguously states:
"... If the application is made after a general appearance the court may refuse to grant the judgment of dismissal except with prejudice."
This language leaves no doubt that, after a general appearance, the plaintiff's right to dismiss is within the sound discretion of the trial court. State v. Sky Eagle, 345 So.2d 189 (La.App. 3d Cir. 1977). It is well settled that the trial judge's wide discretion in acting on a motion for a continuance will not be disturbed on appeal absent a clear showing of abuse of that discretion. Sauce v. Bussell, 298 So.2d 832 (La.1974).
In analyzing whether a trial court has abused this discretion the particular facts and circumstances of each case must be considered. C.C.P. 1671 and 1672 give the trial judge wide discretion to dismiss an action, with or without prejudice, analogous to that allowed in ruling on a motion for a continuance. In either case the trial judge's unique position gives him superior ability to determine the terms of a dismissal. He has first hand knowledge of the course of the trial, the circumstances surrounding each individual case, the evidence put forth by each party, and the effect a dismissal without prejudice will have on his docket. He must balance considerations of fairness to both parties against those of fairness to other litigants in his court and the need for an orderly and prompt administration of justice. Thomas v. State of Louisiana, 383 So.2d 108, (La.App. 3d Cir. 1980); Martin v. South Coast Corp., 356 So.2d 500, (La.App. 1st Cir. 1977); Malter v. McKinney, 310 So.2d 696, (La.App. 1st Cir. 1975); Powell v. Giddens, 271 So.2d 596, (La.App. 1st Cir. 1972).
In the circumstances presented by this case we find no abuse of discretion in dismissing appellant's suit with prejudice. The hearing on the preliminary injunction in this matter took a full week of trial time. To devote a week to such a matter is an unusual circumstance, and illustrates the thoroughness with which all issues raised by the application were explored. It is significant that many of the issues and allegations made in that application are identical to those raised at the trial on the merits. This includes the allegations of a conspiracy by defendants to deny plaintiff staff privileges at Children's Hospital, which is the main thrust of the plaintiffs case.
At the time of Dr. Spencer's attempted suicide the only evidence not yet presented in support of her claim was her own testimony and that of her C.P.A. Dr. Spencer had given extensive testimony at the injunction hearing which preceded the trial on the merits. In addition, she had an opportunity to relate her version of the facts at a deposition taken by the defendants in December of 1979, slightly more than one month before the trial. The opinion of Judge Duran, who had tried the preliminary injunction, was part of the evidence as was the opinion of this court upholding Judge Duran's denial of the injunction. These opinions left no doubt as to the throughness with which these issues had been covered previously. In addition, the trial judge himself heard three weeks of exhaustive testimony on behalf of the plaintiff. He clearly did not feel that Dr. Spencer's testimony would bring out significant new evidence not already covered by her prior testimony and depositions. We cannot disagree with this conclusion given the facts of this case.
*1312 In deciding whether to dismiss a suit with or without prejudice the trial court must balance the plaintiff's interests in a dismissal without prejudice against society's interest in a just result and the orderly disposition of disputes between parties. While pleadings should generally be construed so as to afford a litigant his day in court, the ultimate end of all judicial interpretations of this type should be substantial justice for both parties. Roy v. Commercial Union Assurance Co., 385 So.2d 1273, (La.App. 3d Cir. 1980)
Here there simply was not sufficient justification in the record or in the plaintiff's motion for "mistrial" to support a dismissal without prejudice. The record makes it quite clear that Dr. Spencer's testimony was not likely to add significantly to the strength of her case. A great deal of judicial time had already been expended on this controversy. Much of that time was spent in duplicitous relitigation of the same factual circumstances. There is no reason to allow this same set of facts to be litigated again when the result cannot reasonably be expected to be different.
In a case such as this one, where it appears that the plaintiff has failed to make out its case due to a lack of sufficient evidence, and it does not appear that further proceedings would substantiate the plaintiffs claim, dismissal with prejudice is appropriate. Strother v. Villere Coal Co., 15 So.2d 383 (La.App. Orleans 1943) The judgment of the trial court is therefore affirmed.
All costs of this appeal to be borne by appellant.
AFFIRM.
WARD, Judge, concurs and assigns written reasons.
I concur in the result, but I disagree with the majority's reasons for its judgment. The majority's opinion unnecessarily and erroneously relies upon a strained interpretation of La. C.C.P. Art. 1671 to reach what I believe to be the correct result for the wrong reasons. First, the majority concludes that the Trial Judge did not have authority to dismiss with prejudice Dr. Spencer's lawsuit in the absence of a motion to dismiss. Then, after having created the need for a motion, the majority uncovers Dr. Spencer's motion for a mistrial and converts it to a motion to dismiss without prejudice. As if this were not enough, it then holds that if counsel for plaintiff file a motion to dismiss without prejudice after an answer is filed, they may be surprised more than that, shocked, to find they gave authority to the Trial Judge to dismiss the suit with prejudice. Shot down with their own bullet, so to speak.
In my opinion, this interpretation is erroneous. The intent of Art. 1671 is to distinguish those situations when the Trial Judge must grant a dismissal upon motion of counsel from those situations when he may exercise his discretion and refuse. That is to say, before an answer is filed, a plaintiff's motion to dismiss without prejudice must be granted; and equally, after an answer is filed, a plaintiff's motion to dismiss with prejudice must be granted; and it is within the sound discretion of the Trial Judge to refuse to grant a motion to dismiss without prejudice after an answer is filed. However, neither Art. 1671 nor Art. 1672 prohibits the Trial Judge from acting on his own initiative and exercising his sound discretion by dismissing the lawsuit. While it is also true that nothing in the Code of Civil Procedure specifically grants this discretion, it is my opinion that the Trial Judge in some rare instances has the authority through the inherent power of the courts to dismiss a lawsuit, as, say, for gross misconduct of one of the parties and to prevent the court from becoming a public spectacle. La. C.C.P. Arts. 191 and 1631.[1]
This is not to say there was gross misconduct in the instant case. Here plaintiff failed to appear on the day set for her to testify in her lawsuit. Had counsel for *1313 defendants moved for dismissal, the motion would have been properly granted under Art. 1672. In my opinion, merely because opposing counsel does not move for dismissal, the Trial Judge does not have to sit idly by, waiting for counsel to make a proper motion. Here, too, and for the same reasons, I believe it is within the inherent power of the Trial Judge to order an involuntary dismissal, even on his own motion, because of plaintiff's willful absence and failure to appear during trial.
This Court's recent decisions holding that a Trial Judge does not have authority to direct a verdict in the absence of a motion by counsel (Pete v. NOPSI and Schloegel v. Robinson, supra) has been extended by the majority to hold that he may never dismiss with prejudice any lawsuit. I do not believe that rule applicable to those unusual, rare, unique situations, as in this case, where necessity dictates that the Trial Court exercise its inherent authority, even without a motion of counsel.
The Trial Judge did not err by dismissing plaintiff's lawsuit with prejudice, even in the absence of a motion by opposing counsel.
NOTES
[1] Art. 191. A court possesses inherently all of the power necessary for the exercise of its jurisdiction even though not granted expressly by law.

Art. 1631. The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.