432 So.2d 823 (1983)
Rowena SPENCER, M.D.
v.
CHILDREN'S HOSPITAL et al.
No. 82-C-2724.
Supreme Court of Louisiana.
May 23, 1983.
A.D. Freeman, Satterlee, Mestayer & Freeman, New Orleans, for applicant.
John R. Martzell, Martzell, Montero & Lamothe, Henry B. Alsobrook, Jr., Gregory J. Laborde, Adams & Reese, A.R. Christovich, Christovich & Kearney, New Orleans, Peter T. Dazzio, Watson, Blanche, Wilson & Posner, W. Shelby McKenzie, Nancy Tyler, Taylor, Porter, Brooks & Phillips, Baton Rouge, Gordon F. Wilson, Jr., Dodge, Friend, Wilson & Spedale, Corinne Ann Morrison, New Orleans, for respondent.
DIXON, Chief Justice.
The trial judge, on his own motion, dismissed Dr. Spencer's suit with prejudice. The Court of Appeal affirmed. Rowena Spencer, M.D. v. Children's Hospital et al., 419 So.2d 1307 (La.App.1982).
*824 This jury trial was in its third week. On Thursday afternoon, January 31, 1980, plaintiff had almost completed her case; Dr. Spencer was scheduled to testify, probably her last witness. Her lawyer broached the subject of compromise. Court recessed and consultations began, continuing for the rest of the afternoon. Plaintiff's lawyer was unable to make any progress with a compromise and notified the other side.
The next day, Friday, February 1, Dr. Spencer was not present at the hour for court. When her lawyer finally reached her at home on the telephone, she was "groggy." Plaintiff's own physician was informed and court was recessed until Monday.
On Monday plaintiff's lawyer informed the court that his client had been hospitalized on February 1 as the result of an unsuccessful suicide attempt. The trial judge immediately announced that he had been considering a directed verdict for defendants, and had only waited for the plaintiff to testify and complete her case. Observing that Dr. Spencer had "deliberately taken steps to prevent her from testifying in the ordinary course of this court proceeding the court will therefore render a judgment because she was not available to give her testimony. I am therefore going to dismiss the lawsuit with prejudice against the plaintiff. That is my ruling."
Plaintiff's lawyer filed a motion for a mistrial (to which he had earlier referred). It was denied.
When argument commenced on February 4 the judge knew plaintiff was hospitalized, but he did not know exactly why, nor for how long. He first suggested that her earlier testimony (at a previous hearing and on deposition) be used, and "close it (the trial) out." Plaintiff's lawyer objected because the earlier testimony was incomplete, and the deposition had been taken by the defense.
The defense lawyers strenuously opposed a mistrial and some suggested a week's continuance, a suggestion met by objections from plaintiff's counsel and one defense lawyer. At this point, the court learned that plaintiff had attempted suicide; the dismissal with prejudice followed.
Plaintiff then applied for writs to the Court of Appeal; that court annulled the judgment of dismissal and remanded for an evidentiary hearing. At that hearing it was established that Dr. Spencer had, in a distraught and depressed condition, indeed attempted to take her own life. There was no evidence of a false effort, or of a design merely to disrupt the proceedings, in spite of which the trial judge found "that the attempt was deliberate, was made with the definite intent not to continue the trial." The original judgment was reinstated.
On appeal the court found "error in his reasoning," but affirmed.
The Court of Appeal correctly held that the trial judge has no power to dismiss a case on his own motion. Voluntary dismissals, with or without prejudice, are only made "upon application of the plaintiff." C.C.P. 1671. It is true that dismissal can be made on the application of any party "when the plaintiff fails to appear on the day set for trial." C.C.P. 1672. But, as noted in Comment (g) of that article, an appearance is always either personally or through an attorney. See C.C.P. 7. The presence in court of the plaintiff is not essential in all cases.
The Court of Appeal construed plaintiff's motion for a mistrial as a motion to dismiss without prejudice, because "mistrial" is not mentioned in the Code of Civil Procedure; the Court of Appeal found that plaintiff could not have intended to ask for a new trial because that "device is reserved for post-judgment pre-appeal situations." The Court of Appeal dismissed with prejudice because the motion was made "after a general appearance." C.C.P. 1671. Having treated the motion for mistrial as a motion to dismiss without prejudice, the Court of Appeal concluded that the trial judge had the discretion to dismiss with prejudice.
C.C.P. 1671 grants no such power to the judge. He is merely empowered to "refuse to grant the judgment of dismissal except *825 with prejudice." Upon objection, the dismissal should not be granted with prejudice and the case should proceed.
"Mistrial" is not unknown in civil cases in Louisiana. A mistrial occurs when a jury fails to agree. Pierson v. Times-Picayune Publishing Co., 148 La. 817, 819, 88 So. 77, 78 (1921); Putnam & Norman v. Levee, 180 La. 101, 103, 156 So. 189 (1934).[1] There have been several Louisiana civil cases where one party has moved for a mistrial because of some action or comment by the trial judge,[2] by a party,[3] by a party's attorney,[4] or by a juror or jurors[5] which the moving party believed prejudicial to his case. There have also been motions for a mistrial in Louisiana civil trials when one party believed the trial court had unfairly alloted the peremptory challenges.[6] In only one of these cases, where a mistrial had been denied did the Court of Appeal, on review, reverse the trial court.[7]
These cases demonstrate that "mistrial" is not a foreign device in Louisiana civil trials. Although the Code of Civil Procedure does not provide for mistrials, this device is not precluded when no other remedy would afford relief. C.C. 21 provides:
"In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. To decide equitably, an appeal is to be made to natural law and reason, or received usages, where positive law is silent."
Article 191 of the Code of Civil Procedure provides:
"A court possesses inherently all of the power necessary for the exercise of its *826 jurisdiction even though not granted expressly by law."
These principles were early recognized in Louisiana to provide procedural devices where none existed under positive law: Morris v. Cain, 35 La.Ann. 759, 762 (1883), where the court adopted interpleader practice when none was provided in the Code of Practice; In re Liquidation of Mitchell-Borne Construction Co., 145 La. 379, 390, 82 So. 377, 381 (1919), where the court provided for the appointment of a receiver to a partnership despite no express provision in the law.
In other jurisdictions, mistrial is available when, prior to the completion of the trial and rendition of a judgment, the court determines that there is some error or irregularity in the case which prevents reaching a proper judgment. See Midwest Lime Co. v. Independence County Chancery Court, 261 Ark. 695, 551 S.W.2d 537, 540 (Ark.1977); Vilander v. Hawkinson, 183 Kan. 214, 326 P.2d 273, 276 (Kan.1958); Curley v. Boston Herald-Traveler Corp., 314 Mass. 31, 49 N.E.2d 445, 446 (Mass.1943); C.W. Hunt Co. v. Boston Elevated Ry. Co., 217 Mass. 319, 104 N.E. 728, 730 (Mass.1914); Cortimeglia v. Herron, 281 S.W. 305, 306 (Tex.Ct.App. 1926). "A mistrial is declared because of some circumstance indicating that justice may not be done if the trial is continued." Midwest Lime Co. v. Independence County Chancery Court, supra, 551 S.W.2d at 540.
"A mistrial is granted in the heat of trial with little or no time for deliberation and no opportunity to see what the rest of the trial will unfold; a new trial will be granted after the chance for deliberation and for viewing the prejudicial event in better perspective." Fleming James, Jr., Civil Procedure, § 7.18, 303 (1965).
The result of a declaration of a mistrial is that the jury is discharged and a new trial is had with the impaneling of another jury to try the case anew. See Pierson v. Times-Picayune Publishing Co., supra; Putnam & Norman v. Levee, supra. See also Curley v. Boston Herald-Traveler Corp., supra.
The trial judge in the case before us hardly considered plaintiff's motion for a mistrial; he construed plaintiff's actions as a deliberate effort to disrupt the proceedings.
The deposition of Dr. Wynne, Dr. Spencer's psychiatrist, taken as evidence for the hearing held on remand from the Court of Appeal, reveals that plaintiff was suffering from a serious mental condition and was emotionally unstable. He testified that Dr. Spencer had told him that she attempted suicide because "her life had seemed totally hopeless to her." He explained her condition as severe depression which was tied directly with some of her underlying personality patterns and which was to a "mild degree reactive." He stated: "In other words, her depression is only made a little better or a little worse with the circumstances around her."
In his deposition Dr. Wynne explained that Dr. Spencer was his patient before the suicide attempt and that she continues to see him. He further testified that Dr. Spencer had spoken of taking her life on occasions prior to this attempt, but that this was the only actual attempt to end her life.
When questioned as to whether Dr. Spencer's attempt was "a knowing, conscious, deliberate act of a person in touch with reality," Dr. Wynne responded:
"Well, I do not think anytime a person is so depressed that they are willing to give up life itself, that they are in touch with reality."
His testimony continued as follows:
"Q Can a severe depression debilitate a person and make an individual unable to make a conscious, knowing choice?
A Yes, I think at the time as part of their depression, they tend to see everything as being totally hopeless.
Q When you say she knew what she was doing and it was a deliberate act, it was within the context of this severe depression that she was suffering from?
A That's right. In this short period of actual psychosis.
Q You use the word `psychosis.'
A Out of reality.
Q This is an abnormal state of mind?

*827 A Abnormal state of mind.
Q Is a decision or a choice made by a person suffering from a temporary psychosis of depression be (sic) distinguishable from a decision or a choice made by a person not suffering from a psychosis or a severe depression?
A Well, the very choice that an individual would make to give up life itselfin our culture, any real valid suicidal attempt indicates a severe psychotic depression."
Dr. Wynne's deposition testimony was uncontradicted, and established that Dr. Spencer's suicide attempt was not merely a tactic to cause delay. He testified:
"A That's right. It was a valid suicide attempt. This was not a dramatization or a scream for help.
. . . . .
Q When she took the overdose, in your opinion, she knew that this overdose was lethal; didn't she?
A She thought that it was.
Q She intended for it to be lethal; is that correct?
A Yes.
Q She hoped for the consequence of death; is that correct?
A Yes."
The trial judge's conclusion that plaintiff's suicide attempt was merely an effort to disrupt the trial is clearly wrong.
If plaintiff's absence from the trial had been caused by a sudden physical illness which prevented her presence in court, the trial judge would surely not have dismissed her case with prejudice. He could, and probably would, have made a more deliberate inquiry to determine the cause and probable duration of her confinement. A brief recess for this purpose, alone, might have provided recovery time sufficient for plaintiff to return to court and testify. (She was, in fact, discharged from the hospital on February 4, the very morning the suit was dismissed). If a recess proved impractical, or prejudicial to other parties, the judge then had available to him the device sought by plaintiff's counsela mistrial.
For these reasons, the judgments of the courts below are reversed; the case is remanded to the district court for a new trial. Defendants, Children's Hospital, James L. Massey, Jr., James M. Cain, Dr. Henry LaRocca, Dr. John M. Roberts, Dr. Blackwell Evans, Dr. George Sterne, Dr. Henry Simon, Dr. James L. Reynolds, Dr. Ray J. Haddad, Jr., Dr. Alma Joanne Gates and Dr. Richard Fowler, are cast with the costs attributable to the review of the judgment dismissing plaintiff's suit with prejudice; determination of responsibility for other costs to await final judgment.
DENNIS, J., concurs.
NOTES
[1] See also, e.g., Granger v. Robertson, 421 So.2d 977, 978 (La.App.1982); Lawrence v. Grant Parish School Board, 409 So.2d 1316, 1317 n. 1 (La.App.), writ denied, 412 So.2d 1110 (La.1982); Lege v. State Farm Mutual Automobile Insurance Co., 386 So.2d 123, 124 (La. App.), writ denied, 392 So.2d 684 (La. 1980); McConathy v. United Services Automobile Association, 188 So.2d 470, 471 (La.App.1966); Reiley v. Atlas Construction Co., 146 So.2d 211, 212-13 (La.App.1962); Clair v. Gaudet, 144 So.2d 638, 640 (La.App.1962); Bryant v. Johnson, 140 So.2d 758, 759 (La.App.1962).
[2] See, e.g., Johnson v. Allstate Insurance Co., 410 So.2d 777, 778 (La.App.), writ denied, 414 So.2d 378 (La.1982); Gianechini v. City of New Orleans, 410 So.2d 292, 300 (La.App.), writ denied, 412 So.2d 1109 (La.1982), appeal dismissed, ___ U.S. ___, 103 S.Ct. 24, 74 L.Ed.2d 40 (1983); Daigle v. Lang, 377 So.2d 1384, 1388 (La.App.), writ denied, 381 So.2d 510 (La.1980); Outlaw v. Bituminous Insurance Co., 357 So.2d 1350, 1353 (La.App.), writ denied, 359 So.2d 1293 (La.1978); Hernandez v. New Orleans Public Service Inc., 346 So.2d 304, 306 (La. App.), writ denied, 349 So.2d 876 (La.1977) (dissenting opinion); Morris v. Morris, 336 So.2d 254, 258 (La.App.1976); Wilson v. Virgademo, 258 So.2d 572, 577-78 (La.App.1972); Johnson v. H.W. Parson Motors, Inc. 231 So.2d 73, 78-9 (La.App.1970); Britt v. Travelers Indemnity Co., 205 So.2d 880, 884-86 (La.App. 1968).
[3] See, e.g., Luquette v. Bouillion, 184 So.2d 766, 770-71 (La.App.1966); Begnaud v. Texas & New Orleans Railroad Co., 136 So.2d 123, 129-30 (La.App.1961).
[4] See, e.g., Boyette v. Auger Timber Co., 403 So.2d 800, 802-03 (La.App.), writ denied, 407 So.2d 731 (La.1981); Troxler v. Hertz Corp., 385 So.2d 507, 509-10 (La.App.), writ denied, 393 So.2d 736 (La.1980); Williams v. Sentry Insurance Co., 370 So.2d 901, 903 (La.App.), writ denied, 372 So.2d 1055 (La.1979); Hoffman v. All Star Insurance Corp., 288 So.2d 388, 393-94 (La.App.), writ denied, 290 So.2d 909 (La.1974); Callahan v. Town of Bunkie, 287 So.2d 629, 634-35 (La.App.1973), not considered, 290 So.2d 905 (La.1974); Viator v. Gilbert, 206 So.2d 106, 108-09 (La.App.), writ refused, 251 La. 1048, 208 So.2d 323 (1968); Luquette v. Bouillion, 184 So.2d 766, 770-71 (La. App.1966); Leblanc v. Phoenix Assurance Co. of New York, 158 So.2d 256, 259 (La.App. 1963).
[5] See, e.g., Boyette v. Auger Timber Co., 403 So.2d 800, 802-03 (La.App.), writ denied, 407 So.2d 731 (La.1981); Reece v. Shell Oil Co., 400 So.2d 692, 694 (La.App.), writ not considered, 406 So.2d 605-06 (La.1981); Kollet v. Baggot, 400 So.2d 1085, 1086-87 (La.App.1981); Carollo v. Wilson, 345 So.2d 601, 608 (La.App.1977); Viator v. Gilbert, 206 So.2d 106, 108-09 (La. App.), writ refused, 251 La. 1048, 208 So.2d 323 (1968).
[6] See, e.g., O'Brien v. Delta Gas, Inc., 426 So.2d 262, 266 n. 4 (La.App.1983); Nettles v. Bowlin, 417 So.2d 1192, 1198 (La.App.) (on rehearing), writ denied, 422 So.2d 416-17 (La.1982).
[7] Nettles v. Bowlin, 417 So.2d 1192, 1198 (La. App.) (on rehearing), writ denied, 422 So.2d 416-17 (La.1982).