LAND, J.
Plaintiff, a widow, sues individually and as natural tutrix of her minor son, Lucius Alexander, to recover for herself the sum of $6,081, subject to credits of $1,250 and $131, and to recover for her minor son the sum of $23,050, on allegations substantially as follows:
That on June 12, 1912, about 8 a. m., Lucius, while in the employ of the defendant, and while working for said company as a rivet heater, and while discharging his duties as such, was thrown from the top of condenser box No. 53 to the ground, a distance of about 26 feet. That in consequence of said fall, Lucius suffered a compound *57 fracture of his right leg between the knee and the hip, and his left leg was also broken between the knee and the hip.
That the proximate and sole cause of said fall and resulting injuries was the defective and careless construction and dangerous condition of a platform or scaffold erected by the defendant, its' employSs and agents, on top of an open steel box known as condenser box No. 58, about 13 feet deep, and erected upon walls of the same height, a portion of which scaffold gave way under the said Lucius and threw him to the ground. That said scaffold was constructed by placing loose planks of irregular lengths, widths and thickness across the corner of the said open steel box. That defendant failed to place around the scaffold such ropes or railings as would have prevented the injury to the said Lucius, who did not knotw of the dangerous condition of the scaffold and had not been warned of its dangers.
That the said Lucius was at the time of said fall in a place where he had a right to be, in the discharge of his duties as rivet heater, and was free from contributory negligence.
That Lucius was not yet 14 years of age, yet nevertheless he was placed by defendant and required to work in said extremely dangerous position, without the knowledge or consent of his mother, against her repeated requests not to place him in a dangerous place to work.
That, as the result of said injuries caused by the gross carelessness and negligence of the defendant, Lucius’ right leg is smaller than it should be, is not apparently growing, is weak and crooked, and the right knee is stiff; his left leg is crooked and weak, and his right foot has lost its spring or elasticity; that he is still lame, and walks with great difficulty and with a shuffle. That for 7 months after he was injured, he was unable to work; and his earning capacity has been reduced from $2.25 to 75 cents per day, or at the rate of $450 per year. Plaintiff alleged that she was a widow, and has three other minor children, and that she depended on the wages of her son, Lucius, for a support.
That plaintiff is entitled to the wages of her son until he reaches majority, and that his loss of earning capacity during the interval will amount to $3,150.
That the charges of surgeons, physicians, nurses, hospitals, etc., necessitated by his injuries amount to $1,300,' of which sum the defendant has voluntarily paid about $1,250. That plaintiff is entitled to recover of the defendant the sum of $500 for loss of time and care of her son while injured and unable to help himself, and $1,000 for her pain and mental anguish over her son’s pitiful condition.
That the defendant also placed Lucius on its pay roll at 75 cents a day for 175 days while he >vas unable to work, making a total of $131, for which amount plaintiff wishes to give the defendant credit. That Lucius is entitled to recover for loss of earning capacity after his majority the sum of $17,550, and $3,000 for pain and suffering, and the further sum of $2,500 for annoyance, embarrassment, and humiliation caused him and to be suffered by him in the future because of his crookened and misshapened limbs and uncertain step and shuffling gait.
The answer of the defendant denies most of the allegations of the petition; and as to the alleged age of boy, the answer for lack of information neither admits nor denies—
“but the defendant avers that at the time Lucius Alexander was employed, he stated to the defendant that he was 16 years of age, and that he was a well-grown and well-developed lad, appearing to be the age stated, and that defendant had no reason to believe that he had misstated his age at the time of his employment; that had defendant known he was not 16 years of age, he would not have beeu employed.”
Defendant specially denies that the platform was in a dangerous condition, and avers *59 that there was no danger except that of falling therefrom, as to which plaintiff’s son had been specifically cautioned. Defendant specially denies that plaintiff’s son was thrown from the top of condenser No. 53, as alleged in the petition. Defendant avers that the highest wages ever paid Lucius was 75 cents a day, and specially denies that it was then paying him a larger sum; the truth being that the boy returned to defendant’s employ and was paid 75 cents a day until he of his own volition quit about the time this suit was brought.
Defendant avers that the sum of $1,250, referred to in the petition, was not paid because of any legal liability to the plaintiff, but was expended for humanitarian principles and on account of sympathy for one of its employés. Defendant makes a similar averment as to the sum of $131, wages paid during the disability of plaintiff’s son.
In a supplemental answer, the defendant avers that Lucius was not acting in the discharge of his duties as rivet heater at the time that he sustained the injuries set forth in the petition, but was neglecting his duties, and had left the platform to which he had been assigned, but that he fell from the top of another platform through his own gross negligence and carelessness.
The cause was tried before the judge on the issues raised by the pleadings, and in due course judgment was rendered in favor of the defendant. The plaintiff has appealed.
The judge assigned oral reasons for his judgment, and we are therefore unable to say whether his decision was based on the nonnegligenee of the defendant, or on the contributory negligence of the plaintiff’s son.
While not alleged in the petition, it appears from plaintiff’s motion for a new trial that her counsel urged on the trial that the employment of plaintiff’s son, a minor under the age of 14 years, was contrary to the laws of Louisiana, and constituted negligence per se.
In its answer to the motion for a new trial, defendant admitted that the evidence established the fact that Lucius was a minor of the age of 13 years when employed by defendant, but averred that such employment was not negligence per se, and that the said Lucius was not in the discharge of his duties at the time he was injured, and was not injured because of the negligence of the defendant, its agent and employés.
Plaintiff sent her son to defendant to obtain employment because she needed his wages for her support. The boy was questioned by Mr. Clark, a foreman of the defendant, one of whose duties was to hire laborers, and, from the boy’s answers which were entered on his application card, it appears that he stated that he was 16 years of age, and gave the name of his last employer.
The foreman was Induced by the answer of Lucius, and by his physical appearance, to believe that the boy was 16 years old, and thereupon employed him as water boy at a wage of 75 cents per day. The employment of boys under 15 years of age was against the orders of the defendant company.
Dr. Kemp testified that at the dictation of the plaintiff, he wrote down the age of her son as 17, in an application for an accident or sick benefit policy of insurance.
Lucius admits in his testimony that he told Mr. Clark that he was- 16 years old. The boy’s height was 5 feet and 7% inches, and his photograph shows that he was well proportioned.
The evidence makes it clear that the false answer of Lucius as to his age, seemingly corroborated by his physical appearance, induced Foreman Clark to employ him.
Plaintiff’s contention is that defendant’s employment of said minor was in violation of section 1 of Act No. 301 of 1908, making it unlawful' —
“for any person, agent, firm, company, copartnership, or corporation to require or permit or suffer or employ any child under the age of 14 *61 years to labor or work in any mill, factory, mine, packing bouse, manufacturing establishment, workshop, laundry, millinery or dressmaking store or mercantile establishment in which more than five persons are employed, or in any theater, concert hall, or in or about any place of amusement where intoxicating liquors are made or sold, or in any bowling alley, boot-blacking establishment, freight or passenger elevator, or in the transmission or distribution of messages, either telegraph or telephone, or any other messages, or merchandise, or in any other occupation not herein enumerated which may be deemed unhealthful or dangerous.”
The same section provides that it “shall in no way be construed as applying to agricultural or domestic industries,” and that any violation of its provision shall be punished by a fine of not less than $25 or more than $50, or by imprisonment for not less than ten days or more than six months, or both.
The defendant’s objection that its great oil refinery at Baton Rouge does not come within the purview of the said section is without merit.
Under the evidence there can be no question that the defendant employed the boy in good faith, relying on his statement as to his age, and his physical appearance. But some courts have held that statements of minors as to their age furnish no justification for their employment in violation of child labor laws.
The authorities differ on the question of the legal effect of such a violation on the liability of the employer for injuries sustained by the minor in the course of his employment. One idea is that the hiring of a minor under the prescribed age in violation of the statute constitutes negligence per se, which well render the employer liable for all injuries suffered in consequence of and in course of the employment.
Another view is that the hiring of a minor under the prescribed age to operate a dangerous machine is evidence of negligence, in case the child is injured in so working, because the statute indicates that such children are unfit, by reason of their immaturity and indiscretion, to be so employed. “But the view which more nearly comports with judicial analogies is that such unlawful employment of a child does not, per se, constitute negligence which will render the employer liable for injuries to the child where such employment is not the direct or proximate cause of the injury.” Thompson on Negligence (2d Ed.) vol. 4, § 3827.
The doctrine thus announced was adopted by this court in Darsam v. Kohlmann, 123 La. 171, 48 South. 784, 20 L. R. A. (N. S.) 881, as one “sustained by a consensus of opinion,” citing numerous authorities, including a number of Louisiana cases. In that case, the boy who was injured was not 12 years of age, and had been employed in contravention of section 1 of Act No. 34, p. 50, 1906, reading:
“That no boy under the age of twelve years, and no girl under the age of fourteen years, shall be employed in any factory, mill,” etc.
The court found that the boy was guilty of contributory negligence in meddling with a cogwheel, and affirmed the verdict and judgment in favor of the defendant. We adhere to the doctrine of the Darsam Oase.
Act No. 301 of 1908 prohibits the.employment of any child, male or female, under the age of 14 years. The only penalty prescribed by the statute for the violation of any of its provisions is fine or imprisonment, or both. There is not the remotest suggestion in the wording of the statute that the lawmakers intended to deal with the question of the liability of the employer for injuries that might be sustained by the boy or girl in the course of his or her employment. The statute penalizes the employment, without regard to any physical injury that may result therefrom to the child. The statute permits the employment of children under 14 years of age in “agricultural and domestic industries,” and in factories and shops where five persons or less are employed; but forbids *63 their employment in mills, shops, etc., where a greater number of persons are employed, in places where intoxicating liquors are sold, and in certain callings deemed detrimental to children of tender age. The only penalty provided for a violation of the statute is fine or imprisonment, or both. There is not a single expression in the act from which can be inferred the legislative intent to make the employer an insurer of the child against accidents caused by its own negligence.
In the case at bar, the boy, although not quite 14 years old, had the physique of a youth of the age of 16 years, and was of average intelligence. After working 7 or 8 months as a water carrier, plaintiff’s son was taken on trial as a rivet heater for a gang of men, who were driving rivets in the bottom of a condenser box. The work of the boy was done on a scaffold, consisting of four planks laid across the top of the condenser box. The rivets, when sufficiently heated in a small coal forge, were drawn out by means of a pair of tongs, and east down to the bottom of the condenser. Amhrein, one of the riveters, as a witness for the plaintiff, testified that the boy did not fall from his own scaffold, but from another scaffold about 4 or 5 feet distant; that immediately after the accident, he heated rivets on the scaffold which had been occupied by the hoy, and found it in good condition. The boy in his testimony admits that he did not fall from his own scaffold. The fact that he fell from the other scaffold was demonstrated by the spot at which his body struck the ground. The undisputed facts just stated utterly disprove the sworn allegations of the petition that plaintiff’s son fell from the scaffold on which he was working, and that his fall was due to its defective and careless construction, and dangerous condition.
On the trial of the case the plaintiff shifted her position, and endeavored to prove that the other scaffold, from which her son fell, was in a defective and dangerous condition.
The two scaffolds were separated by an open space 4 or 5 feet wide, and 13 feet in depth, and were occupied by different rivet heaters, working for different gangs of riveters. The only connection between them was the top of the condenser box, called the “angle iron,” about 3 inches wide.
According to his own testimony, Lucius, prior to June 12, 1912, had been heating rivets on the scaffold over condenser box No. 53 for only one day; that about 8:30 a. m. of June 12, 1912, on finding that his tongs would not hold, he stepped over to the next scaffold, which was not then occupied, to get another pair. He put one foot on the angle iron, and then stepped on the other scaffold and picked up the tongs, and as he turned around he put one foot on a plank, which tilted up and threw him off the scaffold. He paid no attention to the planks on the scaffold, and did not know which plank tilted.
Amhrein testified that when he went to take Lucius’ place, he saw only two boards upon the scaffold which Lucius had fallen from, and they were about 12 inches wide, and about 6 inches apart, and were not attached to the top of the condenser in any way. As the same witness testified that he heated rivets on Lucius’ scaffold, it may be presumed that he used the tongs which Lucius had left behind.
Lucius, on being recalled, testified that some of the planks on the other scaffold were 2 inches thick, but he did not know how wide, “but there was a littler plank in the middle of the scaffold.” This evidence was given after a demonstration in open court that a plank 2 inches thick would not have been tilted by Lucius’ weight.
Such inconsistent testimony is entitled to little credit, especially when coming from a witness who admitted that he had deliberately made a false statement as to his age, and thereby induced the defendant to employ *65 him in contravention of the statute. It is more probable that Lucius fell from the angle bar as he stepped upon it on his way to his own scaffold. The fact that one of Lucius’ worn shoes, with a big hole in the sole, was pulled off suggests that his foot was caught, and as a consequence he was thrown to the ground. Be that as it may, the testimony of the boy shows that he had been heating rivets for four days, that he must have known the condition of the tongs which he was using, and that he made no complaint to his foreman that they were too much worn for further use. The evidence shows that new tongs would have been furnished to' the boy at any time on his application. The hoy’s testimony, however, does not explain how tongs, which he used on June 11th, were found unfit for use on the morning of the next day. But, accepting the boy’s version as true, he should have applied to his foreman for better tongs. Instead of so doing, he elected to leave his safe place of work, and to attempt the perilous feat of reaching another scaffold, for the purpose of appropriating a pair of tongs thereon, which were used by another rivet heater. On his own showing, the boy displayed a reckless disregard of his own safety, amounting to gross negligence; and his own conduct was the direct and proximate cause of the accident and the injury. The evidence shows no fault on the part of the defendant which contributed directly to the injury. The original unlawful employment of the boy, as a link in the chain of causation, is too remote and indirect to be considered.
We, therefore, conclude that the judgment below is correct.
Judgment affirmed.
O’NIELL, J., dissents.