543 So.2d 35 (1989)
Connie R. BYRD, Individually and as Natural Tutrix of the Minor, Gregory Gene Byrd, Plaintiff-Appellant,
v.
BOSSIER PARISH SCHOOL BOARD, et al., Defendants-Appellees.
No. 20,090-CA
Court of Appeal of Louisiana, Second Circuit.
January 18, 1989.
On Rehearing May 10, 1989.
Rehearing Denied June 1, 1989.
*36 Roy A. Raspanti, New Orleans, for plaintiff-appellant.
Henry N. Brown, Jr., Dist. Atty., for defendants-appellees Bossier Parish School Bd. and Charles O. Bennett.
Mayer, Smith & Roberts by Paul R. Mayer, Shreveport, for defendants-appellees, Pellerin Milnor Corp. & Pellerin Laundry Machinery Sales Co.
Roland V. McKneely, Jr., Bossier City, for defendant-appellee, Miles Holiday.
Bodenheimer, Jones, Klotz & Simmons by Harry D. Simmons, Shreveport, for defendants-appellees, Earl Haynes and Colony Ins. Co.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, for defendant-appellee, Assurance Co.
Blanchard, Walker, O'Quin & Roberts by Julie Mobley LaFargue, Shreveport, for defendant-appellee, U.S. Fire Ins. Co.
Before HALL, SEXTON and NORRIS, JJ.
SEXTON, Judge.
This appeal arises from the rejection of plaintiff's demands against the Bossier Parish School Board and its employees arising out of injuries received by the minor, Gregory Byrd. We affirm.

FACTS
On December 12, 1979, Gregory Byrd, three months shy of his 15th birthday, received very serious injuries to his leg while using an extractor (a device which performs much the same function as the spin cycle on a washing machine) at Airline High School. Plaintiff, Connie Byrd, filed suit individually and on behalf of her then minor son against the manufacturer of the extractor, the Bossier Parish School Board (the purchaser of the extractor), one coach employed by the School Board at Airline High School, the principal of Airline High School and the Director of Maintenance for the Parish School Board. Greg Byrd was later named as party plaintiff after reaching the age of majority.
The case against the manufacturer and the employees of the school board was tried by jury and the case against the school board by judge. After the trial began, plaintiff settled with the manufacturer, Pellerin Milnor Corporation, who was dismissed from the suit. At the end of plaintiff's case, the trial court granted motions for directed verdict in favor of the coach, the principal, and the director of maintenance. The trial judge, however, denied the motion for directed verdict in favor of the Bossier Parish School Board. The jury was dismissed and suit against the school board continued. The trial judge found the Bossier Parish School Board negligent through the actions of Coach Albert Belle, not a named defendant, as he was the party responsible for the supervision of Greg Byrd. The court determined that Coach Belle failed to properly *37 supervise and instruct Greg in the use of the extractor. However, the trial court also found that Greg Byrd was contributorily negligent, thus barring his recovery against the school board.[*] Plaintiff appeals, contending that the lower court erred in granting the directed verdicts in favor of the School Board employees, in finding that Greg Byrd was contributorily negligent, and if Greg was contributorily negligent, in finding that contributory negligence barred his recovery.

CONTRIBUTORY NEGLIGENCE OF GREGORY BYRD
We initially focus on the pivotal question of the plaintiff's negligence and we do so in the fashion argued by appellant. He first contends that the trial court was clearly wrong in finding him negligent. Appellant argues that he was never instructed on the use of the extractor located in the varsity room, a machine he contends he had never used prior to the injury. He also asserts that he was told by the coaches to "hurry up" in preparation for a game after school and therefore was required to use the machine. Additionally, appellant argues that he was not negligent as he was attempting to use the brake or lever as he was instructed to do, and therefore his actions in attempting to stop the machine were not unreasonable. Appellant finally argues that his youth should be taken into consideration in determining the reasonableness of his actions.
Although a youth of Greg's age is certainly capable of contributory negligence, the application of the doctrine is not a mechanical rule which can be applied to determine the capability of a child to observe and avoid danger. Lawrence v. Grant Parish School Board, 409 So.2d 1316 (La.App. 3d Cir.1982). Such a child's caution must be judged by his maturity and capacity to evaluate circumstances in each particular case, and he must exercise only the care expected of his age, intelligence and experience. Wilkinson v. Hartford Accident and Indemnity Co., 411 So.2d 22 (La.1982); Plauche v. Consolidated Companies, Inc., 235 La. 692, 105 So.2d 269 (1958).
A child is not held to the same degree of care as an adult. Rather, the test is whether the particular child, considering his age, background, and inherent intelligence, indulged in the gross disregard of his own safety in face of known, understood, and perceived danger. Simmons v. Beauregard Parish School Board, 315 So.2d 883 (La.App. 3d Cir.1975), writ denied, 320 So. 2d 207 (La.1975); Lawrence v. Grant Parish School Board, supra.
The plaintiff was a student manager for the basketball team, working primarily with the freshman team. His duties included assisting in the preparation of the team's equipment and uniforms for practice and games. At the time of the accident, the plaintiff was washing clothes in preparation for a 5:00 p.m. freshman game.
The extractor in question is located in the varsity locker room. It is situated between a washer and a dryer on a base which the pictures in evidence indicate is approximately six inches above the ground. There is a distance of approximately two to three feet between each machine.
The extractor is manufactured by Pellerin Milnor Corporation and is a "twenty-inch" extractor. We assume that this number refers to the diameter of the inner tub. The extractor is 36 inches high and 28¼ inches wide.
The extractor is equipped with an automatic braking system. A timer is provided which activates the electrical brake. Additionally, the machine is equipped with an interlock lever, which has no independent braking effect upon the basket. However, in emergency situations, the lever can be pushed back to break the electrical circuit and thereafter cause the electrical brake to apply. The design of the machine is such that the interlock lever should be pushed completely back before the lid of the extractor can be opened.
Coach Albert Belle, the teacher of Greg's physical education class, testified that he saw Greg immediately prior to the accident.
*38 He testified that Greg informed him that he had to do "work" for Coach Holiday. He testified that Greg would have been in his class at that time if he had not been washing clothes. After this time, the coach heard a noise in the gym and later entered the gym to find Greg. Coach Belle testified that he never instructed Greg personally as to how to work the machine, but that he did instruct some students on the operation of the extractor. He testified that he informed the students never to raise the lid while the tub was spinning. He was aware that there was a problem with the extractor failing to stop and had talked to Coach Clyde Roten, another coach at the school, about this problem. Coach Belle said that he spoke to Greg after the accident. Coach Belle testified that Greg told him that he had tried to stop the machine with his foot. While Coach Belle could not say for certain whether Greg meant that he had climbed on top of the machine to use his foot on the brake and had fallen in or whether he had put his foot in the tub itself to stop the machine, he was of the impression that the latter occurred.
Coach Roten testified that he personally instructed student managers Barry Ingram and Tim Wallace as to the dangers of the extractors and he also knew of the braking problems of the extractor. He noted that he informed his student managers not to open the machine while the tub was still spinning. He stated that there were signs in both locker rooms which informed the managers not to open the lid while the tub was spinning. Finally, he testified that he also spoke to Greg after the accident, who told him that he tried to stop the extractor with his foot.
Miles Holiday, the head coach for the basketball team, indicated that he instructed team managers Barry Ingram and Tim Wallace to instruct the other managers, but did not personally instruct Greg Byrd as to the operation of the extractor. He knew that the managers were operating the machinery without supervision, but he did not have time to check on the gym between classes. His testimony was that Greg told him that he tried to stop the machine with his foot and that his understanding was that Greg put his foot in the machine to stop it. He testified that he informed the managers not to get into the machine or put any part of their bodies into it. He testified that it surprised him that a student would in fact do such a thing.
The testimony of Greg Byrd indicates Tim Wallace instructed him on how to use the equipment. Greg testified that the manager said "not to stick your hands in there orany other part of your body, it would tear it off." He additionally indicated that the manager informed him that the lever on the side of the machine was a brake but that no one ever told him not to use or put his foot on the brake in order to stop it. He testified that he never wanted to "stick" his leg in the machine. He stated that he had used the extractor in the P.E. room on at least ten occasions.
However, on this particular day he was in a hurry as there was a tournament after school and it was necessary for him to also use the extractor in the varsity gym. As he got into the varsity room, he noticed that the washing machine already contained towels. At that point, he transferred the towels to the extractor and then inserted his clothes in the washing machine. After 30 or 40 seconds passed, he attempted to take the clothes out of the extractor and push the lever back after turning off the switch. He lifted the lid, but the extractor continued to turn. He then attempted to push the lever again but it would not stop. He left the varsity room and went across the gym to the P.E. side. As he had clothes in the washer on that side, he took them out, put them into the extractor and started it. After they were finished, he pushed the lever back, lifted the lid and put those clothes in the dryer. He then exited the P.E. locker room and ran back across the gym. As he did so, he noted the extractor was still spinning and the lid was up. He pushed the lever back again, but it still would not stop. He desired to place more pressure on the lever and claims to have attempted to use his foot to do so. He stated: "I wanted to put more pressure on it, so I was going to use by [sic] foot on it. I remember starting to *39 get on top the machine and after that, I don't remember anything else." Greg testified that he was rushed as the coach had told him to hurry because the clothes were needed for the tournament that night. He testified that he put his foot on top of the machine to activate the brake "because [he] was in a hurry. I had to get done."
The testimony of Tim Wallace, another student manager, indicated that his normal procedure was to lift the lid and wait for the extractor to stop spinning. He admitted that the spinning would take a couple of minutes to stop but that one could open the door before the spinning stopped. He was told not to put any part of his body in the machine and felt that it was "common sense" for any person to understand the consequences of doing so.
The trial judge noted in his opinion that the plaintiff, Greg Byrd, was negligent, either by using his leg in an attempt to stop the basket from spinning or by climbing on the machine while the lid was open and the machine was running. Plaintiff argues that because of his young age that no negligence should be imputed to him. However, the Court recognizes that within a period of three months after this injury, Greg Byrd would have been allowed to obtain a driver's license in the State of Louisiana and operate what is probably the most dangerous piece of machinery known to man, the automobile.
After reviewing the evidence in this case, we cannot determine that the trial court was clearly wrong in its determination that Greg Byrd's actions were factually negligent. The trial judge determined that either action, the placing of the foot into the extractor or the placing of the foot on the lever in order to stop the extractor, constituted contributory negligence on the part of Greg. He therefore refrained from the factual determination of what exactly transpired in the case.
In either instance, the danger inherent in the placing of a limb into a spinning cylinder had not only been communicated to Greg but was obvious from the nature of the extractor, and was not overridden by the fact that Greg was a few months younger than 15 years of age. Clearly, if Greg intended to place his foot into the tub to stop the machine, he was aware of the danger involved. He testified that he was informed not to do so as "it would tear it off." By his own admission, therefore, he perceived the danger involved in intentionally placing his foot in the machine to stop the spinning.
Even if the conclusion is reached that Greg attempted to use his foot in order to engage the brake in an attempt to stop the machine, the risk created by the climbing on top of the machine coupled with the fact that the extractor cover was open can be classified as nothing short of a gross disregard for his own safety. He was aware of the possibility of injury if he placed a limb into this machine. The possibility was greatly increased by his actions in climbing onto the machine when the cover was open. Greg was almost 15 years old. He had operated the extractors on at least ten occasions. Clearly, he was of at least normal intelligence, sufficient to understand and appreciate the danger involved in his action. The warning given to Greg and his obvious understanding of that warning should have put him on notice that the same danger was present when he climbed on top of an open, spinning extractor and placed a limb in close proximity.
Moreover, we think the evidence preponderates that Greg indeed was attempting to stop the machine by placing his foot in the tub. While, as appellant argues, Greg did not specifically say that he put his foot in the tub, all of those who testified on the subject were of that impression. Particularly telling is the testimony of Coach Holiday who pointed out that he reached this conclusion because no amount of additional pressure on the lever of this particular machine was effective in slowing the spinning of the tub.
Appellant strenuously argues the similarities between the instant case and that of Lawrence v. Grant Parish School Board, supra. In Lawrence, a 14 year old was attending an agricultural class wherein students were learning to weld. A power saw *40 was stored in the back of the building where the class was held which was easily accessible to any of the students. The saw was used periodically by teachers and students. Prior to the class, the saw had been used by another student and, at the time of the accident, the saw was attached to an extension cord and was plugged into a wall socket. The blade of the saw was "cranked up" but contained no safety guard. The safety guard was not on the saw when it was stored by the school board. Clearly, the student in Lawrence was informed not to use the power equipment. However, at a time when the instructor was outside of the class, the 14 year old attempted to cut a piece of wood and his hand came into contact with the saw.
The Third Circuit found the school board negligent based upon a breach of its duty to the minor and under the doctrine of respondeat superior based upon the failure of the teacher to supervise the students at all times in spite of the presence of inherently dangerous equipment. The Third Circuit found that the 14 year old was not contributorily negligent. In so finding, the court noted that the child was a 14 year old who had never before operated a power saw and was never instructed in the operation of one. The school did not instruct the pupils as to why they were not to use the power saw or tell them that they could be injured. Although the court found that the evidence indicated that the 14 year old was instructed not to use the power saw, it stated that mere instructions alone to a 14 year old not to use a power saw that was easily accessible and could be turned on by merely flipping a switch were insufficient to trigger the doctrine of contributory negligence on the part of the child. The court noted that the child's only wrong was to use a saw that he was told not to use and that "simple disobedience did not constitute contributory negligence."
We find the Lawrence case distinguishable from the case at hand. Clearly, there is a difference in the type of power-driven equipment in each instance. The inherently dangerous nature of a power saw, when compared to the extractor, is quite obvious. The power saw, by its very nature, is used to cut or sever objects. Its purpose, therefore, is of a dangerous character. An extractor, on the other hand, although power driven, is used to wring clothing. Although potentially dangerous, as the facts of this case illustrate, the danger comes through its misuse rather than normal use. In Lawrence neither the dangerous propensity of the power saw nor the resulting injuries that could occur were ever explained to the children; they were simply told not to use the saw. Also, the children were left unattended in the presence of a dangerous object which contained no warning signs. Therefore, it cannot be said that the disobeying child in Lawrence fully comprehended the possible consequences of his act. In the present case, unlike Lawrence, warning signs were clearly posted informing managers not to open the lid while the extractor was spinning. Greg, nevertheless, chose to do so. Additionally, even assuming arguendo the scenario which the plaintiff contends, Greg at the very least climbed up on a three-foot machine with the lid open. Further, Greg was fully aware of the danger of placing one's limbs into the machine. He consciously undertook the potentially dangerous act, the consequences of which he understood.
Considering the foregoing reasons, we cannot conclude that the trial court was clearly wrong in finding Greg Byrd negligent.

APPLICABILITY OF CONTRIBUTORY NEGLIGENCE AS A BAR TO RECOVERY
Our determination that the factual finding of contributory negligence was not clearly wrong does not end our inquiry. Appellant argues that even if the trial court finding of contributory negligence on the part of Greg Byrd was not in error, he is not barred from recovery. In this respect, he cites LSA-R.S. 23:163, which reads as follows:
§ 163. Minors under sixteen; prohibited employments
*41 No minor under the age of sixteen years shall be employed, permitted, or suffered to work:
(1) In, or about, or in connection with a poolroom or billiard room.
(2) In, or about, or in connection with power-driven machinery.
(3) In any manufacturing or processing establishment, or in any manufacturing, mechanical, or processing occupation.
(4) In the close proximity of any lounge or other location where alcoholic beverages are sold, except as provided in R.S. 26:88 and R.S. 26:285.
(5) In any other occupation for which a higher minimum age is required.
His argument centers around the claim that Greg was in fact "employed, permitted or suffered to work" by the defendant on power-driven machinery, namely, the extractor. He therefore argues that Greg clearly falls within the provisions of LSA-R.S. 23:163. Appellant cites jurisprudence dealing with the application of LSA-R.S. 23:163 in instances where minors were employed in violation of the statute and were injured.
We decline to jurisprudentially extend the application of this article to the educational sphere. LSA-R.S. 23:163 is located in Title 23 of the Revised Statutes dealing with labor and worker's compensation law. Specifically, the article falls under Chapter III, entitled Employment Standards and Conditions and is located in Part 1 subpart B, of that chapter dealing with minors and employment privileges and restrictions. The location of the article in question in the Revised Statutes demonstrates the legislative intent as to the statute. Title 23 deals with labor and worker's compensation and the specific chapter under which LSA-R.S. 23:163 falls deals with employment standards and conditions. These statutes, adopted out of humane considerations, are found in Chapter 3 of Title 23 entitled Employment Standards and Conditions and fall specifically under part one of that chapter dealing with minors. They are enacted to protect children of tender ages from the hazards and harms of the sweat shops of industry. Kennedy v. Johnson Lumber Co., 33 So.2d 558 (La. App. 2d Cir.1947). Clearly, the provisions are in the form of child labor laws in the employment context.
Greg was not employed by the school board. His activities were not in the nature of employment but were of a voluntary extracurricular nature. He was not paid, nor did he work regular hours. Student managers enjoy a special relationship with the teams they serve. They are non-playing participants on those teams and earn the right to a letter by virtue of the satisfactory performance of their duties in assisting their teams. It is a significant extracurricular activity having obvious educational value.
The topic of extracurricular activities in the school system is dealt with specifically in Title 17 of the Revised Statutes under LSA-R.S. 17:176. These provisions are separate and apart from Title 23 and demonstrate the differing nature of these two types of activities. Moreover, LSA-R.S. 23:151 specifically excludes application
to minors employed in ... employment or training related to the curriculum while attending a business or vocational-technical school approved by the State Board of Elementary and Secondary Education or the Advisory Commission on Proprietary Schools, which would include minors engaged in on-the-job training under the supervision of the same employer.
While not specifically on point, this article demonstrates that even in the employment realm, school and school programs are not intended to be included under this title. Thus, we determine that Greg Byrd does not fall under the specific provisions of LSA-R.S. 23:163. Thus, the defendant has not breached a statutory duty to this plaintiff.
This determination, however, does not end the inquiry into whether or not Greg's contributory negligence should act as a bar to recovery. Appellant argues that even if he were factually negligent, that negligence is not a legal bar to his recovery. In other words, the risk created by his contributory *42 negligence was overwhelmed by the scope of the duty he was owed by the defendant through its employees.
Generally, in order for a school board to be liable, it must have had actual or constructive knowledge of a condition unreasonably dangerous to the children under its supervision. Lawrence v. Grant Parish School Board, supra; Ardoin v. Evangeline Parish School Board, 376 So.2d 372 (La.App. 3rd Cir.1979).
The plaintiff was a student manager who was injured in the process of washing uniforms for a basketball game several hours away. He was using a machine just like one he had used on a number of previous occasions. The only difference is that the instant machine was slow to quit spinning. The plaintiff was aware of the danger of placing limbs in the machine, having been warned by other more senior managers of that danger. Further, a warning to this effect was clearly posted. However, this almost 15-year-old plaintiff put his foot in the machine to stop it. To do so, he had to open the lid and climb up on top of the three foot high machine.
We observe even if the machine did not stop spinning when it should have, it is dangerous only if a limb is placed in the machine. It is physically difficult to place a leg in the machine, and the danger is obvious and posted. It seems to us the only way the accident could have been prevented under these circumstances was if a faculty member had closely supervised the washing of the uniforms, an unreasonable expectation. In other words, the supervision required would, to a significant extent, obviate the need for, and value of, student managers. For these reasons, we do not believe that the duty owed by the defendant encompasses the risk which this plaintiff presented.
The judgment appealed is affirmed at appellant's cost.
AFFIRMED.
NORRIS, J., dissents and assigns written reasons.
NORRIS, Judge, dissents.
I respectfully dissent from the majority's determination that LSA-R.S. 23:163 is inapplicable and that plaintiff is barred from recovery because of his contributory negligence. The statute reads in pertinent part:
No minor under the age of 16 years shall be * * * permitted * * * to work:
(1) * * *
(2) In, or about, or in connection with power-driven machinery.

* * * * * *
The majority rationalizes that the statute cannot be extended to cover the instant situation because young Byrd was not formally "employed" by the school board. The majority also cites a statutory exclusion from coverage based on LSA-R.S. 23:151. I disagree on both counts
The clear, unambiguous wording of R.S. 23:163 prohibits not just formal employment but also the permitting or suffering of a minor under the age of 16 to work about or in connection with power-driven machinery. It is not disputed that Greg Byrd was under 16 years of age; was "working" about or in connection with the power-driven extractor; and was permitted, in fact instructed, by the coaches to do so. While Greg was not formally employed and paid wages for performing his duties, he was selected by the coaches to be a manager for the team and, as such, expected to perform such duties as washing and drying uniforms in order to receive the "perks" the manager's position enjoyed. Had the manager's position not been available to the coaches, some employee of the school board would have had to perform this "work" function. The school board, through its employees, selected Greg to do this work, permitted him to do it and should not be allowed to escape liability for its actions simply because there was no formal employment agreement.
Furthermore, young Byrd was not employed in agriculture, domestic service in a private home, or in training related to the curriculum while attending a business or a vocational-technical school. LSA-R.S. 23:151. The majority has extended the reference to a vo-tech school to include any school, but the statute by its express terms does not apply.
*43 I believe R.S. 23:163 applies. Its purpose is to protect young Byrd from accidents which might befall him while operating power-driven machinery. Boyer v. Johnson, 360 So.2d 1164 (La.1978). The school board breached its duty to Byrd by violating the statute. The risk of harm that actually occured fell within the scope of the duty breached. Dixie Drive-It-Yourself Syst. New Orleans, Inc. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Boyer v. Johnson, supra.
Where the purpose of the applicable statute is to protect a minor against the risk of his own negligence, contributory negligence does not defeat his recovery. Boyer v. Johnson, supra.
Plaintiff is entitled to recover substantial damages against the school board.

ON REHEARING
Before HALL, MARVIN, FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
We granted a rehearing to reassess the applicability of LSA-R.S. 23:163 and to reconsider the issue of contributory negligence. For the reasons expressed, we reverse and render.

FACTS
The plaintiff Greg Byrd was seriously injured while using the laundry extractor in the varsity room at Airline High School during school hours on December 9, 1979. Greg was at the time 14 years and nine months old, and was in the ninth grade. He was doing laundry that afternoon at the request of Coach Belle, who had chosen him to be freshman basketball team manager. Greg was in a rush because the team needed clean uniforms in time for a tournament game after school. Greg started washing with the equipment he had used before in the P.E. room, but he had another load to do so he went to the varsity room. It had similar equipment which he had not used before.
The equipment consists of a washing machine, an extractor and a dryer. The extractor is a power-driven machine that spins excess water out of wet clothes before drying. The lid is on top of the machine. Varsity student manager Tim Wallace had told him how to use the extractor: first remove the wet clothes from the washer and put them in the extractor, then spin the extractor for 30 or 40 seconds, then lift the lid and wait for the basket to stop spinning, and finally remove the clothes and place them in the dryer. Wallace also told him about a lever on the top surface of the machine. He said it was a hand brake that could be used to stop the spinning. He told Greg not to place his hand or any part of his body in the machine or else the machine would tear it off. There was a warning sign posted above the machine; it said not to open the lid while the basket was still in motion. The coaches never instructed Greg how to use the extractor properly; the oral instructions from Wallace conflicted with the posted sign. Greg knew nonetheless that the extractor in the P.E. room would stop within five or six seconds after he opened the lid.
When he opened the lid of the extractor in the varsity room, however, the machine did not stop. He pushed the lever without success. Leaving the lid open, he ran to the P.E. room and did a complete extractor cycle there. When he returned, the varisty room extractor was still spinning. He was in a hurry; he had to get the job finished. According to Greg, he thought he could get more pressure on the lever by using his foot. He climbed onto the machine in an effort to get his foot on the lever. The next thing he remembers is standing beside the machine, his left leg in excruciating pain. He has no memory of the actual accident or how it occurred. Coach Belle, who visited Greg in the hospital, testified at one point that Greg said he placed his foot on top of the brake to stop the machine; he later testified that Greg said he placed his foot inside the spinning tub to stop it. Coach Roten testified that Greg simply said he tried to stop the machine with his foot; Coach Holiday said likewise.
*44 The trial court found that Coach Belle was responsible for the supervision of the freshman basketball team; he never instructed Greg on the proper use of the extractor; thus the school board was charged with his negligence under the theory of respondeat superior. The court then addressed Greg's fault. It found that Greg climbed onto the machine, but could not conclude whether he pressed the lever with his foot and slipped, or actually placed his left leg in the spinning basket. The court nevertheless found that in either event, Greg was contributorily negligent, this case having arisen before the enactment of comparative fault. See LSA-Acts 1979, No. 431, § 4. The court dismissed Greg's claims.
On appeal, the plaintiff urged the trial court erred in holding him contributorily negligent. He cited a child labor statute that prohibits employing, permitting or suffering any minor under the age of 16 to work in, about or in connection with power-driven machinery; he contended that by violating the statute the school board placed him at a risk the statute was intended to prevent. On original hearing we felt that this plaintiff was indeed capable of contributory negligence and the trial court did not err in so finding. We further held that the child labor statute did not apply to the case, and affirmed the judgment. One judge dissented.

APPLICATION OF THE STATUTE
On rehearing, plaintiff asserts that the statutory exclusion on which we originally relied in analyzing the child labor statute does not apply to the facts. The general ban against certain labor by minors under the age of 16 is announced in LSA-R.S. 23:163. It provides in part:
§ 163. Minors under sixteen; prohibited employments
No minor under the age of sixteen years shall be employed, permitted, or suffered to work:
* * * * * *
(2) In, or about, or in connection with power-driven machinery. * * *
On original hearing, this court cited two reasons why the statute did not apply. First we held that Greg was not formally "employed" by the school board; his actions were, rather, of a voluntary, extracurricular nature. We now feel, however, that the question of employment under this statute is close. Greg did not receive a salary, but he got valuable "perks" such as free travel with the team, admission to games, a letter jacket; in exchange he performed services such as doing laundry, for which the school board would have to pay a maid or quartermaster, but for Greg's involvement. All the coaches referred to Greg's tasks as "work" and Coach Holiday stated that he "hired" his managers. Admittedly, the thought that student participants in school athletics may be considered employees of the school might be "more than the mind can tolerate." See A. Larson, Workmen's Comp. § 22.23 (1985).
The statute, however, proscribes not only formal "employment." In broader scope, it prohibits permitting or suffering a minor under the age of 16 to work in or about, or in connection with power-driven machinery. To "permit" or "suffer" means to let, allow, or enable someone to do something. It is conceded that Coach Belle instructed Greg to use the extractor; a fortiori he permitted or suffered him to use it. In order to use it, Greg worked "in connection with" the extractor, which is a piece of power-driven machinery. Greg was a minor under the age of 16. This proves every element of the proscribed conduct; the statute will apply absent an exclusion.
The second reason we declined to apply the statute was a perceived exclusion in LSA-R.S. 23:151. It provides in part:
§ 151. Application of provisions
The provisions of this Part shall not apply to * * * employment or training related to the curriculum while attending a business or vocational-technical school approved by the State Board of Elementary and Secondary Education or the Advisory Commission on Proprietary Schools, which would include minors engaged in on-the-job training under the supervision of the same employer during *45 summer vacation and those minors who have successfully completed such an accredited or approved program, or any minor employed in any federally funded youth training program, nor shall they be construed as conflicting with any laws requiring minors to attend school. * * * (emphasis added)
On original hearing, we concluded that the exclusion did not specifically fit the facts of the case, but felt it expressed a legislative intent to exempt school-related activities from the proscriptions of the Part, including R.S. 23:161. On reconsideration we now conclude the predominant legislative purpose in enacting these statutes was to protect children, who are young and inexperienced, from the risks of working around power-driven equipment. See Boyer v. Johnson, 360 So.2d 1164, 1166 (La.1978); Alexander v. Standard Oil of La., 140 La. 54, 72 So. 806 (1916). The court now feels that the exclusions of R.S. 23:151, which derogate from the general salutary protections, should not be construed beyond their precise terms.
Obviously, R.S. 23:151 excludes from the ban employment or training related to the student's curriculum while he is attending a business or vo-tech school. It does not exclude general labor while attending a regular high school. The reason for this exclusion, which was added by LSA-Acts 1972, No. 71, is apparent; a minor under the age of 16 could not otherwise obtain technical training on power-driven equipment; and vo-tech classes are closely supervised. The same rationale does not obtain for general labor performed by students at or around a high school. The regular high school curriculum does not usually require students to work in, around or in connection with power-driven machinery. In Greg's case, doing laundry with an extractor for the basketball team was not related to any curriculum in business, vocational or technical training.
We also feel that R.S. 23:151, insofar as it creates an exclusion for activities required by the laws of compulsory school attendance, should not be extended to activities that are fundamentally voluntary and extracurricular. Greg Byrd could have declined to use the extractor; this may have lost him his manager's position, but it would not have run afoul of the laws requiring minors to attend school. See LSA-R.S. 17:221 et seq.
Furthermore, viewing the statutes as a whole, we are convinced that the specific provisions of R.S. 23:163 embody the legislative intent to protect inexperienced minors under age 16 from the dangers of working in, about or in connection with power-driven machinery. The exclusions of R.S. 23:151 are narrowly drawn for specific legislative purposes. They should not be "interpreted" expansively to foil the legislative scheme.
We have thoroughly scrutinized the remainder of the statute governing employment standards for minors, LSA-R.S. 23:151-274, and have found no other provision that would exempt this plaintiff from the prohibition expressed in R.S. 23:163(2). While the school board did not formally employ Greg Byrd, it did through the actions of its employee Coach Belle permit or suffer him, while he was a minor under the age of 16, to work in, or about, or in connection with power-driven machinery. This was a violation of the statute and is a form of "fault" for civil purposes. Boyer v. Johnson, supra.

DUTY/RISK ANALYSIS
Finding a violation does not end the inquiry. The plaintiff must prove the statute was intended to protect him from a certain type of injury. The school board strenuously argues that this plaintiff's conduct was contributorily negligent and bars his recovery.
The trial court found the school board guilty of negligence for failing to instruct Greg on the proper use of the extractor. This is not manifestly erroneous. It then found Greg's act negligent as well. Under the system of contributory negligence, this was enough to bar recovery. See LSA-C.C. art. 2323; Smolinski v. Taulli, 276 So.2d 286 (La.1973); Wade, "Comparative NegligenceIts Development in the United *46 States and its Present Status in Louisiana," 40 La.L.Rev. 299 (1980).
We have determined, however, that the school board's liability arises not only from failure to instruct adequately but also from violation of a special statute. The purpose of this statute is to protect the minor below a certain age against the risk of his own negligence. Thus the general rule is that the minor's contributory negligence or assumption of risk will not defeat recovery for his injury, which is the very risk the statute sought to prevent. Boyer v. Johnson, supra at 1169. The Supreme Court earlier stated,
The reason children are forbidden to be employed in dangerous occupations being that they are presumed to be incapable of taking care of themselves, it would seem to be illogical to hold them responsible for their negligence.
Alexander v. Standard Oil of La., 140 La. at 68, 72 So. at 811.
The trial court could not conclude which of the two alleged acts was the one the plaintiff actually performed, either climbing onto the machine to use the lever while the lid was open and slipping into the basket, or using his leg in an attempt to stop the basket from spinning. We conclude that under either scenario, the plaintiff's action will not be defeated.
On original hearing, the majority accepted as by a preponderance of evidence that the plaintiff intentionally stuck his foot in the machine to stop the spinning. We cited Coach Holiday's testimony that no amount of additional pressure on the lever would stop the spinning. We now feel, like the trial court, that the proof is not so plain. Coach Holiday's rendition of what Greg told him was somewhat equivocal. At first he stated that Greg told him he put his foot on the lever; later he stated that Greg admitted sticking his foot directly into the machine. Contrary to Coach Holiday's assertion that extra pressure would not stop the machine, Coach Roten testified the lever could be used as a brake and he may have instructed Tim Wallace to use it as such. Greg testified that he received his instructions from Wallace. According to Wallace, the managers could find out about the lever from simply using the machine. Mr. Pellerin, president of the company that manufactured the extractor, testified that applying pressure to the lever would activate the interlock braking band and produce a minimal braking effect. Supp., 92. Given this state of the evidence, we think Greg could have reasonably assumed that the lever was a kind of brake (though it was not intended as such) and further assumed that by pressing it harder he could make the basket stop spinning. To do so, he imprudently climbed onto the machine to apply his right foot to the lever; he slipped, and the left foot went into the basket.
Even if we accept the other "scenario," it is clear that using his left foot as a brake would not amount to assumption of the risk. The defense of assumption of risk requires such a strong showing of knowledge, understanding and voluntary exposure to the risk that the defendant's act erases the plaintiff's misconduct. Dorry v. Lafleur, 399 So.2d 559 (La.1981). No one has asserted that Greg intended to have his foot wrenched off. And even if he assumed the risk, the child labor statutes encompass this and would allow recovery. Boyer v. Johnson, supra at 1169.
We conclude that Greg Byrd's conduct as found by the trial court falls within the scope of the intended protection. Even though, as the trial court observed, Greg was near the age of receiving a driver's license, he was still a youth who was in a moment of dilemma, torn between the need to satisfy the coaches and his teammates by doing the job quickly, and the apparent malfunction of the machine he was assigned to use. In the pressure of the moment, he committed simple negligence. The statute contemplates that a minor under the age of 16 might not be able to act prudently in every situation. This was such a situation. The school board is liable for Greg Byrd's injuries.

INDEMNIFICATION OR CONTRIBUTION
Greg's mother, Connie Byrd, brought suit in her own behalf and as *47 Greg's natural tutrix; Greg became a party plaintiff when he attained majority. She originally named as defendants the school board, the principal of Airline High, the maintenance supervisor for the school board, Coach Holiday and the manufacturer of the extractor. The school board and the individual defendants filed third party demands against the manufacturer, in effect seeking indemnification and contribution. During trial, the plaintiffs settled with the manufacturer and dismissed it with prejudice by joint motion. R.p. 574. Rights were reserved against the school board and the individual defendants. The latter were dismissed by motions for directed verdict, and this disposition does not appear plainly wrong. After judgment was rendered in favor of the school board, only the plaintiffs appealed; the school board did not reassert its claim for indemnity or contribution.
Since the school board was not seeking to have the judgment modified, revised or reversed in part, it was not obliged to answer the appeal. LSA-C.C.P. art. 2133; Jones v. Louisiana Timber Co., 519 So.2d 333 (La.App. 2d Cir.1988); Pernia v. Trail, 519 So.2d 231 (La.App. 5th Cir.1988), writ denied 520 So.2d 755 (La.1988). The court of appeal is authorized to render any judgment which is just, legal and proper upon the record. LSA-C.C.P. art. 2164. In the instant case, a just judgment would include a consideration of indemnity or contribution.
The trial court found that the manufacturer, Pellerin Milnor Corp., produced a defective product. This finding is not plainly wrong. Mr. Pellerin testified that when the machine was built, it allowed the user to open the lid while the basket was still spinning, contrary to applicable safety standards. Mr. Youngdahl, the plaintiffs' expert, testified that the machine did not come with adequate instructions on how to maintain the true braking system. The manufacturer and the school board each committed negligent acts that contributed to Greg's injury. They were therefore joint tortfeasors and solidary obligors. Because the plaintiffs released the manufacturer, the school board's liability must be reduced to one-half of the damages. Wall v. American Emp. Ins. Co., 386 So.2d 79 (La.1980); Mobley v. Rego Co., 412 So.2d 1143 (La.App. 2d Cir.1982), writ denied 414 So.2d 774, 1251 (La.1982); Diggs v. Hood, 772 F.2d 190 (5th Cir.1985); see also LSA-C.C. art. 2103 (repealed) and LSA-C.C. art. 1803.

QUANTUM
The remaining issue is damages. When the trial court erroneously rejects the plaintiff's claim, and the appellate record is complete as to damages, the appellate court may make an appropriate award. LSA-C. C.P. art. 2164; Dupree v. Louisiana Transit Management, 441 So.2d 436 (La.App. 2d Cir.1983), writ denied 445 So.2d 1233 (La. 1984); Bufkin v. Mid-American Indem. Co., 528 So.2d 589 (La.App. 2d Cir.1988). The appellate court is not bound to enter the lowest possible amount but should set awards that are just and fair. Jones v. P.K. Smith Chevrolet-Olds, 444 So.2d 1372 (La.App. 2d Cir.1984).
The plaintiffs submitted receipts for medical bills, sitting expenses and prosthetics, as P-27 in globo. The total, $35,367.42, will be awarded to the plaintiffs who incurred them, Connie Byrd, individually and as natural tutrix of Greg Byrd, and Greg Byrd.
Several items of future expenses were proved at trial and will be awarded to Greg Byrd. First is psycho-therapy. Dr. Scrignar, a forensic psychiatrist, testified that Greg suffered a dysthymic reaction, involving depression and anxiety, as a result of the loss of his leg. He suggested that Greg would need psychiatric therapy at least once a week for at least two years. Using his lower estimate of $50 per session for group therapy, this comes to $5,200.
The second is vocational rehabilitation. Dr. Gorman, an expert in rehabilitation and social work, first saw Greg in 1985; at the time Greg could not hold a job because of serious, unresolved emotional problems. Dr. Gorman felt, however, that Greg had certain strengths and abilities that could be brought out with success *48 through rehab counseling. He suggested that with one to four years of counseling Greg could overcome his problems. A reasonable cost for this would be $15,000.
The third is future prosthetic devices. Mr. Douglas, an expert in prosthetics, testified that Greg would have to replace his leg roughly once every three years for the next 50 years. He offered one estimate for the "Cadillac" of artificial limbs, and one for the midrange product. A reasonable compromise between these figures would be $50,000.
The fourth item is lost future wages and earning capacity. Mr. Cornwall, a CPA and economics consultant, provided several estimates of Greg's economic loss based on various factors. The factors we consider most relevant include: Dr. Gorman's fair prognosis of Greg's ability to work after rehab; the fact that Greg has held small jobs since the accident; and that Greg has worked outside of Bossier Parish. Based on Mr. Cornwall's figures and our assessment of Greg's residual earning potential, a present award of $300,000 will compensate him for lost future earnings and earning capacity.
Mr. Cornwall also offered an estimate of past lost earnings up to the time of trial in March 1987. This estimate is persuasive and will be adjusted only by a reasonable amount to reflect Greg's actual earnings over the period. The award will be $50,000.
In the area of nonpecuniary losses, the pain and suffering resulting from this accident were great. The extractor did not sever the leg, but broke a bone and twisted it out of the flesh. Greg did not lose consciousness, but recalls standing next to the extractor in excruciating pain, his blood running onto the floor. It was a long wait for the ambulance. He spent 37 days in the hospital; during this time the leg was amputated just above the knee. He was in a body cast for six weeks and later required another operation. In addition to the pain resulting directly from the trauma, there has been the added pain from fitting the artificial legs. The emotional injury and anguish were corroborated by experts like Drs. Scrignar and Gorman. Under the circumstances we feel an award of $325,000 will compensate these losses.
Future losses of the same nature are inevitable. Greg still has "phantom pains" where his leg used to be; future prosthetic fittings will also pose difficulties. He will be disabled in everyday activities and recreational pursuits. There is obvious permanent disfigurement. For these damages we set the award at $300,000.
All of these sums will be reduced by one-half to account for Pellerin Milnor's portion.

DECREE
The trial court's judgment is therefore reversed. Judgment is rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiffs, CONNIE BYRD, individually and as natural tutrix of the minor, and GREGORY BYRD, and against the defendant, BOSSIER PARISH SCHOOL BOARD, in the sum of Seventeen Thousand, Six Hundred, Eighty-Three and .71/1.00 ($17,683.71) Dollars, together with legal interest thereon from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of the plaintiff, GREGORY BYRD, and against the defendant, BOSSIER PARISH SCHOOL BOARD, in the sum of Five Hundred Twenty-One Thousand, Six Hundred and .00/1.00 ($521,600.00) Dollars, together with legal interest thereon from date of judicial demand until paid.
Costs of this appeal are assessed to appellee, Bossier Parish School Board.
REVERSED AND RENDERED.
SEXTON, J., dissents for the reasons expressed in the original opinion.
HALL, C.J., dissents for the reasons expressed in the original opinion.
*49 SEXTON, Judge, dissenting.
I respectfully dissent for the reasons expressed in the original opinion.

ON APPLICATION FOR REHEARING
Before HALL, SEXTON, NORRIS, MARVIN and FRED W. JONES, JJ.
Rehearing denied.
NOTES
[*] This is a pre-comparative fault case.